**STATE of Delaware, upon the relation of W. Laird STABLER, Jr., Attorney General of the State of Delaware, Relator,**

v.

**Arthur E. WHITTINGTON, Jr., et al., Respondents.**

Superior Court of Delaware, New Castle.

March 30, 1972.

Peter M. Sieglaff, Deputy Atty. Gen., for the State.

Samuel R. Russell, Wilmington, Court appointed amicus curiae.

## OPINION

CHRISTIE, Judge.

This is a *quo warranto* proceeding brought by the Attorney General seeking to remove the respondents from their respective public offices in the town of Odessa. The pertinent facts have been stipulated to and cross motions for summary judgment have been filed. The general issue before the Court is whether or not the election pursuant to which respondents assumed office should be set aside as a nullity because they were conducted by means of paper ballots in contravention of 15 Del.C. § 5004. The statute, which became effective on April 9, 1970, provides as follows:

> Voting machines shall be used throughout this State in all primary, general and special elections, and in all municipal elections in all incorporated cities and towns of this State. * * *

The respondents are residents of Odessa, a municipal corporation of about 500 people which operates without the regular help of a city solicitor. On April 5, 1971, a municipal election was held in Odessa for the offices of mayor, councilmen and treasurer. The election was conducted by paper ballot as had been required by Odessa's charter before the provisions of the charter were superceded by the statute in question. As a result, respondent Arthur E. Whittington, Jr., who ran unopposed was elected mayor. Respondents Emil P. Gerardi, Jr., (with 89 votes), Paul W. Manlove (with 74 votes) and Joseph G. Jarrell (with 71 votes) received the necessary votes to be elected as councilmen. The only other candidate for

these council posts was the only losing candidate who had only 47 votes. Respondent Daniel S. Boyle was elected to a different council post unopposed and George M. Taylor was elected treasurer without opposition.

It has been stipulated that there is no evidence of fraud in the conduct of the elections and that the failure to employ voting machines had no effect upon the outcome of the election.

The Attorney General filed this case more than four months after the election seeking to set aside the election on the ground that the conduct of the election did not conform to the requirements of 15 Del. C. § 5004. The respondents have now served about half of their two year terms.

The State contends that the Court is presented with a narrow question of statutory interpretation and argues that the voting machine statute is so mandatory in nature that compliance therewith is an absolute condition precedent to the validity of any election. The State says failure to comply with the statute is such a substantial irregularity that it renders the election void.

Respondents assert that the language of the statute does not compel its interpretation as mandatory under the special conditions present in this case. On the contrary, respondents maintain that statutes merely regulating the manner of conducting an election may be and in this case should be regarded as directory, and hence a departure from the mode prescribed should not vitiate this election. In any event, it is contended that in the absence of fraud, prejudice, or more definite mandatory legislative pronouncement, the statute should be deemed merely directory.

■ The failure to comply with a "mandatory" provision in a statute renders proceedings thereunder to which the statute relates void by definition, while the observance of a "directory" provision may not in every case be essential to the validity of

such proceedings. Hester v. Kamykowski, 13 Ill.2d 481, 150 N.E.2d 196 (1958); Blacks Law Dictionary 1114 (4th ed. 1951).

■ It has been stated that there is no universal rule by which directory provisions may, under the circumstances, be distinguished from those which are mandatory. It is generally agreed, however, that the intention of the legislature should be controlling and no particular verb form should stand in the way of carrying out the legislative intent. 2 Sutherland, Statutory Construction, Sec. 2802 p. 215; Durgin v. Brown, 37 N.J. 189, 180 A.2d 136 (1962). In this connection, it is the duty of the Court to consider the particular language of the statute, the subject matter, the purpose for which the statute was enacted and its importance, the relation of that provision to the general object intended to be secured by the act and the consequences of a contrary construction. 2 Sutherland, Statutory Construction Sec. 2802 et seq. supra.

■ The State particularly directs the attention of the Court to the use of the term "shall" in the statute as manifesting a clear indication of mandatory intent. The word "shall" when addressed to a public official in a statute is generally interpreted as mandatory, particularly where it may be inferred that the regulation is intended to protect persons affected thereby. 39 Words and Phrases, "Shall-In Statutes" p. 154; Gow v. Consolidated Coppermines Corp., 19 Del.Ch. 172, 165 A. 136, 141 (Del. Ch.1933). On the other hand, laws regulating the manner of conducting an election are usually regarded as directory if they do not affect the actual merits of the election. 29 C.J.S. Elections § 214(2), pp. 607–608; 3 McQuillen, Municipal Corporations Sec. 12.10 (3d ed. revised 1963). Thus, it has been observed that, although the manner of holding an election must be regulated, the manner prescribed is intended merely to secure the correct result. Mechem, Public Officers, Sec. 184, p. 113.

The determination of which of the aforesaid broad principles of law is applicable herein controls the interpretation of 15 Del. C. § 5004. The applicable principle of law, in turn, depends upon whether the failure to use voting machines constitutes a mere procedural irregularity or a substantive omission effecting what may be regarded as the jurisdictional basis of the election.

The State relies upon the case of Hampson v. State, 233 A.2d 155 (Del.Sup.1967) as authority for the proposition that it is an essential element of a valid election that it be held by lawful authority and substantially as prescribed by law. In that case a person with no proper authority assumed the duty of election inspector and unlawfully appointed two judges to conduct elections in Odessa contrary to specific provisions in the town charter. The Supreme Court set aside the election on grounds more limited than the State here suggests. The Court there stated:

"The election clearly was conducted by individuals having no lawful *authority* to do so. It is immaterial that the election may have been conducted honestly. If those persons conducting it had no lawful right to do so, it is a nullity, and its results must be set aside." (emphasis added)

■■ It is the opinion of the Court that the *Hampson* case, *supra,* is distinguishable from the instant case on the ground that the failure to use voting machines in the disputed election constituted, under the circumstances, a procedural irregularity not rising to the dignity of a jurisdictional defect and not as significant as the disqualification of all election officials. Younker v. Susong, 173 Iowa 663, 156 N.W. 24 (1916) (decided on other grounds); compare Isgitt v. Jackson, 85 So.2d 290 (La. App.1956). The Court finds that the present case is encompassed within the principle adduced in Brennan v. Black, 34 Del.Ch. 380, 104 A.2d 777 (1954) that minor procedural defects in the conduct of an election unaccompanied by fraud or unfair dealing, and not affecting the result, will not void an election otherwise valid.

■ The State's argument has considerable force. Voting machines serve an important function by insuring that elections are carried out honestly and expeditiously. Notwithstanding, the failure to use voting machines in the conduct of this election is not deemed under the special circumstances of this case to be a jurisdictional defect that compels this Court to construe the subject statute as mandatory and thereby void the election. Affirmative words not relating to the limits of the power or jurisdiction may be construed as directory. 2 Sutherland, Statutory Construction, Sec. 2804, p. 217; Bladen v. Philadelphia, 60 Pa.St. 464, 466 (1869).

■ This election, where all but one candidate ran without opposition, is an appropriate case for a construction which avoids setting aside the entire election. The candidate who defeated the only losing candidate received 50% more votes than the loser and the will of the citizens is clear. It is the duty of the Court, if possible, to sustain elections which have resulted in a full and fair expression of the public will. Rich v. Walker, 374 S.W.2d 476 (Ark. 1964); Stanley v. Southwestern Com. Col. Merged Area, etc., 184 N.W.2d 29 (Iowa 1971).

The Court concludes that notwithstanding the language of 15 Del.C. § 5004, the election held in violation thereof will not be set aside under the very special circumstances present in this case. The decision in this case is a practical one under all the circumstances but an election to be held in the near future for other town officials under the terms of the town charter must be conducted in full compliance with the statute.

■ Furthermore, the existence of this decision must not be interpreted by any municipality as sanction for what was done or a license for any further violation of the statutory voting machine requirements.

Under the special circumstances of this case the Court found that the law afforded it sufficient discretion that it did not have to set aside this particular election. If in the future any municipality persists in ignoring the now much publicized and clear provisions of the statute, the Court will be mindful of the notice given to all municipalities by this case and will be free to impose appropriate remedies including the setting aside of the election.

Respondents' motion for summary judgment is granted and the case is dismissed.