CITY OF DOVER, a municipal corporation of the State of Delaware, Plaintiff,

v.

Philip P. CARTANZA and Sandra L. Cartanza, his wife, Cartanza Farms, Ltd. Partnership, a limited partnership of the State of Delaware, Bank of Delaware, a corporation of the State of Delaware; 2,000 Square Feet of Land, more or less; 2,500 Square Feet of Land, more or less, all situate in Little Creek Hundred, Kent County, State of Delaware; and Unknown Owners,

and

John Leon Tarburton and Emma Tarburton; Federal Land Bank of Baltimore, a corporation of the State of Maryland; Delaware Production Credit Association, a corporation of the State of Delaware; 14,557 Square Feet of Land, more or less; 10,000 Square Feet of Land, more or less; 12,812 Square Feet of Land, more or less; a 50–Foot–Wide Utility Easement, more or less; all situate in Little Creek Hundred, Kent County, State of Delaware; and Unknown Owners,

and

John F. Tarburton and Mary Margaret Tarburton; Federal Land Bank of Baltimore, a corporation of the State of Maryland; 10,000 Square Feet of Land, more or less, 10,000 Square Feet of Land, more or less; all situate in Little Creek Hundred, Kent County, State of Delaware; and Unknown Owners, Defendants.

Superior Court of Delaware,
Kent County.

Submitted: Jan. 18, 1988.
Decided: March 3, 1988.

Nicholas H. Rodriguez of Schmittinger & Rodriguez, P.A., Dover, for plaintiff.

Aubrey B. Lank of Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, for defendants Tarburton.

Thomas I. Barrows of Hudson, Jones, Jaywork & Williams, Dover, for defendants Cartanza.

John I. Ellis, Dover, for defendants Federal Land Bank of Baltimore and Delaware Production Credit Ass'n.

RIDGELY, Judge.

This consolidated action was commenced by the City of Dover ("City") to condemn certain agricultural lands for the installation of production and monitoring water wells to meet the water distribution demands of the City. The City also seeks to acquire easements from the defendant property owners to gain access to and from these wells.

Defendants Tarburton and Cartanza have raised three objections as property owners which they contend preclude the City from taking possession of their lands and further require dismissal of this condemnation proceeding. The objections are: (a) the City's alleged failure to comply with section 9505 of the Real Property Acquisition Act, 29 *Del.C.* §§ 9501–9506; (b) the City's alleged failure to comply with the Delaware Agricultural Lands Preservation Act of 1981, 3 *Del.C.* §§ 901–906; and (c) the alleged lack of necessity for the proposed taking.

After considering the evidence presented and the memoranda of counsel, I conclude that dismissal without prejudice is warranted here because the City has not shown a valid excuse for its noncompliance with the Real Property Acquisition Act.

### I.

The Real Property Acquisition Act ("RPAA") is applicable to "the acquisition of real property by state and local land acquisition programs or projects in which federal, state, or local funds are used." 29 *Del.C.* § 9501. Section 9505 of the RPAA prescribes policies that an agency shall follow in acquiring real property that include conducting an appraisal of the property before the initiation of negotiations.[1] The

---

1. 29 *Del.C.* § 9505 provides:

   **§ 9505. Real property acquisition policies.** The agency shall comply with the following policies:

   (1) Every reasonable effort shall be made to acquire expeditiously real property by negotiation.

   (2) Real property shall be appraised before the initiation of negotiations, and the owner or his designated representative shall be given an opportunity to accompany the appraiser during his inspection of the property.

   (3) Before the initiation of negotiations for real property, an amount shall be established which it is reasonably believed is just compensation therefor, and such amount shall be offered for the property. In no event shall such amount be less than the approved appraisal of the fair market value of real property. Any decrease or increase of the fair market value of real property prior to the date of

purposes of the RPAA, like its federal counterpart, are to encourage and expedite real property acquisitions by agreements with owners, to assure consistent treatment of property owners, to promote public confidence in land acquisition practices, and to avoid litigation and thereby relieve congestion in the courts. *Compare* 42 U.S.C. § 4651.

## II.

■ Preliminarily, I note that the RPAA applies to the real property acquisitions at issue here. City funds for this land acquisition program have been deposited with the Court to compensate the defendant property owners. The City of Dover, as a municipal corporation, is covered by the definition of "agency" contained in section 9505, which includes a "political subdivision of the State." 29 *Del.C.* § 9501. *Compare Kempner v. Aetna Hose, Hook & Ladder Co.*, Del.Ch., 394 A.2d 238, 240 (1978); *Beck v. Claymont School District*, Del.Super., 407 A.2d 226, 228 (1979).

## III.

■ Turning to the issue of compliance with the RPAA, no appraisal was done

valuation caused by any program or project for which such property is acquired or by the likelihood that the property would be acquired for such program or project, other than that due to physical deterioration within the reasonable control of the owner, will be disregarded in determining the compensation for the property. The owner of the real property to be acquired shall be provided with a written statement of, and summary of the basis for, the amount established as just compensation. Where appropriate, the just compensation for the real property acquired and for damages to remaining real property shall be separately stated.
(4) No owner shall be required to surrender possession of real property before the agreed purchase price is paid or deposited with the court, in accordance with Chapter 61 of Title 10, for the benefit of the owner in an amount not less than the approved appraisal of the fair market value of such property, or the amount of the award of compensation in the condemnation proceeding of such property.
(5) Any program or project shall be so scheduled that, to the greatest extent practicable, no person lawfully occupying real property shall be required to move from a dwelling (assuming a replacement dwelling will be available) or to move his business or farm operation

before the initiation of negotiations with defendants Tarburton. There is no evidence of any negotiations with defendants Cartanza prior to the commencement of this proceeding. The City candidly admits noncompliance with the RPAA, but contends that it should be excused because compliance would have been futile. Defendants Tarburton and Cartanza urge that dismissal is required because the policies of the RPAA are both mandatory and jurisdictional. Alternatively, they contend that dismissal is warranted because compliance by the City would not have been futile.

The RPAA on its face states that an "agency *shall* comply" with certain enumerated policies (emphasis added). 29 *Del. C.* § 9505. It is generally presumed that the word "shall" indicates a mandatory requirement. *Delaware Citizens for Clean Air, Inc. v. Water and Air Resources Commission*, Del.Super., 303 A.2d 666, 667 (1973), *aff'd.*, Del.Supr., 310 A.2d 128 (1973). However, this presumption is not a conclusive one. Courts have interpreted Delaware laws containing "shall" as being either mandatory or directory statutes.[2]

without at least 90 days' written notice from the date by which such move is required.
(6) If an owner or tenant is permitted to occupy the real property acquired on a rental basis for a short term or for a period subject to termination by the agency on short notice, the amount of rent required shall not exceed the fair rental value of the property to a short-term occupier.
(7) In no event shall the time for negotiations or condemnation be advanced, the deposit of funds in court for the use of the owner be deferred nor any other coercive action be taken to compel an agreement on the price to be paid for the property.
(8) If an interest in real property is to be acquired by exercise of power of eminent domain, formal condemnation proceedings shall be instituted. The agency shall not intentionally make it necessary for an owner to institute legal proceedings to prove the fact of the taking of his real property.
(9) If the acquisition of only part of the property would leave its owner with an uneconomic remnant, an offer to acquire the entire property shall be made.

**2.** For cases interpreting "shall" as mandatory, see *Heil v. Nationwide Mutual Insurance Co.*, Del.Supr., 371 A.2d 1077, 1078 (1977); *Delaware*

Guidelines for determining when a statute containing "shall" is mandatory or directory already exist:

> It has been stated that there is no universal rule by which directory provisions may, under the circumstances, be distinguished from those that are mandatory. It is generally agreed, however, that the intention of the legislature should be controlling and no particular verb form should stand in the way of carrying out the legislative intent. In this connection, it is the duty of the Court to consider the particular language of the statute, the subject matter, the purpose for which the statute was enacted and its importance, the relation of that provision to the general object intended to be secured by the act and the consequences of contrary construction.

*State ex rel. Stabler v. Whittington,* Del. Super., 290 A.2d 659, 661 (1972) (citations omitted).

In *Whittington,* the Court noted that failure to comply with a "mandatory" provision renders proceedings thereunder void, while the observance of a "directory" provision may not in every case be essential to the validity of such proceedings. In *Bartley v. Davis,* Del.Supr., 519 A.2d 662 (1986), the Supreme Court cited *Whittington, supra,* when it affirmed the interpretation that the word "shall" was directory in the candidate filing fee procedure imposed by 15 *Del.C.* § 3106(a)(1)b. Once the statute was deemed directory, noncompliance was excused on the facts presented by the candidate's good faith effort to comply. The Court noted that the statute did not declare a forfeiture of candidacy for a failure to complete all formalities of the filing process, so the verb "shall" would not control the issue of legislative intent if the statutory context and purpose suggest otherwise. *Bartley v. Davis, supra* at 667.

Here, the test of legislative meaning must also be contextual. In order to conduct the appraisal and negotiations contemplated by the RPAA, the cooperation of the property owner is obviously necessary. A property owner can easily frustrate efforts to comply with the RPAA by refusing to permit an appraisal or by refusing to negotiate in good faith with representatives of an agency. Under this scenario, if the policies were mandatory, a capricious property owner could obstruct reasonable and necessary real property acquisitions by an agency. The General Assembly cannot have intended such a result.

I conclude that the RPAA guidelines are directory rather than mandatory. Therefore, noncompliance may in certain circumstances be excused. Noncompliance is not a jurisdictional defect requiring automatic dismissal whenever it is raised. It is instead a defense or objection to the taking which shall be deemed waived if not presented. 10 *Del.C.* § 6107.[3]

### IV.

■ If noncompliance exists, then the agency must demonstrate a valid excuse for its failure to follow the RPAA's policies. Excuses include the agency's good faith efforts to comply with the policies or a showing that compliance would have been futile.

■ "Any decision concerning payment for use [of property] involves a decision about value, and an intelligent decision

---

*Citizens for Clean Air, Inc. v. Water and Air Resources Commission,* Del.Super., 303 A.2d 666, 667–668 (1973), *aff'd.,* Del.Supr., 310 A.2d 128 (1973); *Gow v. Consolidated Coppermines Corp.,* Del.Ch., 165 A. 136 (1933).

For cases interpreting "shall" as directory or permissive, *see Bartley v. Davis,* Del.Supr., 519 A.2d 662 (1986); *State ex rel. Stabler v. Whittington,* Del.Super., 290 A.2d 659 (1972); *Wooters v. Jornlin,* 477 F.Supp. 1140, 1144–46 (D.Del. 1979).

**3.** 10 *Del.C.* § 6107 provides:

§ 6107. **Objections or defenses to taking.**

Any objection or defense to the taking of the property, or any interest therein, by any defendant, shall be made by answer. Any such answer setting forth any such objection or defense shall identify the property in which the answering defendant claims to have an interest, shall state the nature and extent of the interest claimed, and shall state specifically any such objections or defenses to the taking of the property. All objections and defenses not so presented shall be deemed waived. After the disposition of all such objections and defenses the cause shall proceed to the trial of the issue of just compensation.

about value must be based upon some kind of appraisal." 7 *Nichols on Eminent Domain,* § 4.05. Nevertheless, the City argues that an appraisal was futile here. The City contends that defendants Tarburton unreasonably enlarged the scope of negotiations to include their entire farm. Their concern apparently stems from the restrictive impact that the Safe Drinking Water Act Amendments of 1986, 42 U.S.C. § 300f, may have upon their farming operation, which uses agricultural chemicals. This concern may be addressed in negotiations. Because section 9505(9) of the RPAA requires the City to offer to acquire the entire property if acquisition of a part would leave the owner with an "uneconomic remnant," the need for an appraisal is underscored. The value of the property to be acquired and the value of the remainder after the taking remain as central and unresolved questions. Meaningful negotiations require an appraisal as a starting point. Defendants Tarburton have testified to their ongoing willingness to negotiate with the City based upon a fair market value appraisal. There is no evidence before the Court that defendants Cartanza have refused to negotiate.

While the success of negotiations consistent with the RPAA was and is uncertain, that uncertainty is not equal to futility. The Court is not persuaded that the City's noncompliance with the RPAA should be excused. Given the purposes of the RPAA, the appropriate remedy to ensure compliance with its guidelines is dismissal without prejudice. Should good faith efforts to comply with the RPAA not result in an agreement between the parties, the City may commence another condemnation action.

A ruling on the remaining objections presented is premature.

\* \* \*

These consolidated condemnation actions are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.