**Jack W. LAWSON and Mary Ann Lawson, Defendants Below, Appellants,**

v.

**STATE of Delaware, upon the Relationship of the Secretary of the Department of Transportation, Plaintiff Below, Appellee.**

No. 320, 2012.

Supreme Court of Delaware.

Submitted: May 1, 2013.
Decided: July 22, 2013.

Richard L. Abbott, Abbott Law Firm, Hockessin, Delaware for appellants.

Gregory B. Williams (argued), Austen C. Endersby, and Mian R. Wang, Fox Roths-child LLP, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, Justices and LASTER, Vice Chancellor * constituting the Court en Banc.

STEELE, Chief Justice:

■ In this interlocutory appeal, we hold that the Superior Court judge erred when he found that a state agency complied with Delaware's Real Property Acquisition Act before it moved to condemn property. Where a state agency bases its initial offer to purchase property on an appraisal that contains flawed assumptions about the property's post-taking use, that agency cannot reasonably believe that it offered just compensation. The statute requires a state agency to make an offer that it reasonably believes is just compensation for the property before it initiates condemnation proceedings. Therefore, we hold the state agency violated the statute when it relied on its fundamentally flawed appraisal. Accordingly, we REVERSE the Superior Court's judgment, VACATE the Superior Court's orders, and RE-MAND with instructions to dismiss the condemnation action without prejudice.

## I. FACTUAL AND PROCEDURAL HISTORY

Jack and Mary Ann Lawson own and reside on approximately ten acres of real property located at 323 Strawberry Lane, Middletown, Delaware (the Property). A twelve-foot-wide blacktop driveway provides access to the Property from Strawberry Lane. New Castle County has zoned the Property as "CR, Regional Commercial District." A landowner may develop his CR-zoned property for community and regional commercial uses such

---

* Sitting by designation pursuant to Del. Const. Art. IV § 12.

as restaurants, offices, or shopping centers. Currently, the Lawsons only use the Property as their single-family residence, a legally nonconforming use. In order to commercially develop the Property, the Lawsons would need to widen their driveway significantly in order to obtain a required commercial entrance permit from the Delaware Department of Transportation (DelDOT).

As part of its Route 301 Project, DelDOT sought to acquire 1.51 acres of the Property in a fee acquisition, plus 0.14 acres as a temporary construction easement (the Taking Area). The Taking Area includes all of the Property fronting Strawberry Lane. DelDOT intends to construct a stormwater management pond in the Taking Area that would parallel Strawberry Lane. As a part of this construction, DelDOT plans to remove the Lawsons' current driveway and build a new driveway on another part of the Lawsons' remaining property (the Remainder). Because of the planned location of DelDOT's pond, the new driveway would have to cross it in order to reach Strawberry Lane. To solve that problem, DelDOT planned to construct a raised earthen berm through the middle of the retention pond and build the Lawsons a new twelve-foot-wide driveway on the berm. The Lawsons would still be able to access Strawberry Lane through their relocated driveway.

As a part of planning for the acquisition and in an attempt to acquire the Taking Area through negotiation, DelDOT obtained an appraisal on December 28, 2010, (the Appraisal) so it could make a good-faith estimate of just compensation. The appraiser first determined that the Property's fair market value before DelDOT's planned acquisition was $550,000. The appraiser assumed that the Remainder's highest and best use was for commercial

development (consistent with its CR-zoned status), and he estimated the Remainder's fair market value at $420,000 based on that assumption. Finally, the appraiser valued DelDOT's temporary construction easement at $3,080. Therefore, he estimated that the Taking Area's fair market value was $133,080.

As reflected in DelDOT's Negotiation Record, DelDOT offered the Lawsons $133,100 for the Taking Area on September 12, 2011. DelDOT representatives met with the Lawsons on September 12, to discuss the offer. At that meeting, the Lawsons expressed concern that they would not be able to develop the relocated driveway into a commercial entrance. They also informed DelDOT that they would discuss the offer with their lawyer. Following that meeting in September and October, DelDOT left the Lawsons multiple telephone messages to which the Lawsons did not immediately respond.

On October 12, 2011, the Lawsons' real estate representative, Doug Salmon, informed DelDOT that two engineers had reviewed DelDOT's plans and had concluded that the new driveway would not contain sufficient square footage to accommodate a commercial entrance. Therefore, Salmon told DelDOT, the Lawsons would sell the Taking Area for the Property's full value, $550,000. On October 21, DelDOT spoke again with Salmon, who told DelDOT that he would get paperwork from the Lawsons' engineers explaining why the Lawsons wanted more money than DelDOT's initial offer. DelDOT also told Salmon that "the [A]ppraisal covered all his questions." During November, DelDOT sent Salmon several emails requesting an update on the paperwork.

On November 22, 2011, Salmon emailed DelDOT that the Lawsons had retained a lawyer, Richard Abbott, and that DelDOT should hear from Abbott the following

week. As of November 22, DelDOT's Negotiation Record reflects that DelDOT's representative thought that the negotiation was at an "impasse" and recommended that DelDOT pursue a condemnation action.

On November 28, 2011, Abbott emailed DelDOT to inform DelDOT he represented the Lawsons in this matter. Abbott reiterated to DelDOT the Lawsons' concerns that the Remainder was not suitable for commercial development.[1] DelDOT responded that Abbott should contact DelDOT's counsel because DelDOT had referred the matter to outside counsel with instructions to initiate a condemnation action.

Abbott contacted DelDOT's outside counsel that same day and forwarded Abbott's earlier DelDOT email. Abbott called DelDOT's counsel and discussed the situation, and Abbott later followed up with DelDOT's counsel through email on January 5, 2012. On January 13, DelDOT's counsel responded that he and his client were still considering the matter, but, at that time, DelDOT disagreed with the Lawsons' position.

On January 18, 2012, DelDOT[2] filed a complaint in the Superior Court seeking an order of condemnation. On February 3, DelDOT filed an Amended Complaint and a Motion for Entry of Order Allowing It to Enter Into Possession and Occupy Property to be Taken in Condemnation. DelDOT deposited $133,100 with the Superior Court on February 7 as its good-faith estimate of just compensation.

On February 16, 2012, the Lawsons answered the Amended Complaint and simultaneously filed their objections to DelDOT's right to take based on DelDOT's alleged failure to comply with Delaware's Real Property Acquisition Act (RPAA).[3] The Lawsons also filed a motion to dismiss the condemnation action. On February 24, DelDOT filed its response in opposition to the Lawsons' motion to dismiss. Throughout February and March, the parties engaged in motion practice and filed several affidavits.

On March 15, 2012, the Superior Court judge held a hearing on DelDOT's right to take and the related discovery issues. The judge made several bench rulings at that hearing.[4] He concluded that DelDOT had made a good faith effort to negotiate with

---

1. Abbott noted, "It appears that the elevated roadway and pond to be constructed by DelDOT along my clients' Strawberry Lane road frontage combine to effectively deny commercial access to the remaining 8 + acres of land. Only a small residential driveway access is possible after the taking and highway project." App. to Opening Br. A–87. He continued, "Since the land is zoned CR (Commercial Regional) and it is conceded that Commercial is the highest and best use of the property, the effective denial of commercial access in the 'after the taking' situation constitutes a significant diminution in value." *Id.* Practically speaking, he explained that the Remainder's "highest and best use would be downgraded ... to single family residential use similar to the [Property's] current use." *Id.* According to Abbott's reading of DelDOT's plans, "no additional at-grade or

above-grade area will be available in order to accommodate ... a commercial entrance to the [R]emainder." *Id.* Abbott then specifically informed DelDOT that if he was correct, DelDOT would need "to re-appraise the [Remainder's] [v]alue and make a new offer of just compensation to the Lawsons." *Id.*

2. Although the State filed the Complaint on behalf of the Secretary of the Department of Transportation, we refer to the State as "DelDOT" for simplicity.

3. The Real Property Acquisition Act is located in title 29, chapter 95 of the Delaware Code.

4. *See State ex rel. the Sec'y of the Dep't of Transp. v. Lawson*, C.A. No. N12C–01–128, at 39–49 (Del.Super. Mar. 15, 2012) (TRANSCRIPT).

the Lawsons concerning their Property and ruled on the discovery issues. He specifically found that DelDOT's "offer on the property which is to be taken was made in good faith. And the reason for that is it is supported by an appraisal from a qualified appraiser and there is nothing in the record so far as [he could] tell to dispute it."[5] On May 15, the Superior Court judge entered an Order granting DelDOT's Motion for Possession and Motion for Protective Order and denying the Lawsons' Motion to Dismiss and Motion to Compel.[6] On May 17, the Superior Court judge entered DelDOT's proposed Order on the Motion for Possession.[7]

On May 24, 2012, the Lawsons filed an Application for Certification of Interlocutory Appeal. On June 5, DelDOT filed a response opposing the certification, and on June 20, the Superior Court judge denied the Lawsons' Application. On June 22, we accepted the Lawsons' interlocutory appeal.[8]

## II. STANDARD OF REVIEW

■ We review the Superior Court judge's legal determinations concerning DelDOT's compliance with the Real Property Acquisition Act *de novo*.[9] We will uphold the Superior Court judge's factual findings unless they are clearly erroneous and the record does not support them.[10]

## III. ANALYSIS

■ DelDOT failed to comply with the RPAA, and DelDOT has not demonstrated a valid excuse for its noncompliance. The RPAA applies "to the acquisition of real property by state and local land acquisition programs or projects in which federal, state[,] or local funds are used."[11] The RPAA's purpose is "to encourage and expedite real property acquisitions by agreements with owners, to assure consistent treatment of property owners, to promote public confidence in land acquisition practices, and to avoid litigation and thereby relieve congestion in the courts."[12]

Section 9505 requires state agencies to comply with fifteen policies when acquiring real property.[13] The Lawsons contend that DelDOT inexcusably failed to comply with the RPAA policies located in Sections 9505(1), (3), (4), (7), (15). Because we conclude that DelDOT inexcusably failed to comply with Section 9505(3), we do not reach the other bases for the Lawsons' appeal.

In *Key Properties Group, LLC v. City of Milford*, we implicitly adopted[14] the Supe-

---

5. *Id.* at 39–40.

6. *Lawson*, C.A. No. N12C–01–128 (Del.Super. May 15, 2012) (ORDER).

7. *Lawson*, C.A. No. N12C–01–128 (Del.Super. May 17, 2012) (ORDER).

8. *Lawson v. State ex rel. the Sec'y of the Dep't of Transp.*, No. 320, 2012 (Del. June 22, 2012) (ORDER).

9. *Key Props. Grp., LLC v. City of Milford*, 995 A.2d 147, 150 (Del.2010) (citing *CCS Investors LLC v. Brown*, 977 A.2d 301, 320 (Del.2009)).

10. *See id.* (citing *Wilm. Parking Auth. v. 277 W. 8th St.*, 521 A.2d 227, 233 (Del.1986)).

11. 29 *Del. C.* § 9501(a).

12. *City of Dover v. Cartanza*, 541 A.2d 580, 582 (Del.Super.1988) (citation omitted).

13. 29 *Del. C.* § 9505.

14. *Key Props.*, 995 A.2d at 153–54 (citing *Cartanza*, 541 A.2d at 583 (holding that valid excuses for noncompliance include "the agency's good faith efforts to comply with the policies or a showing that compliance would have been futile")) (stating that municipalities "must follow [the RPAA] before acquiring interests in real property by condemnation," but affirming the Superior Court's conclusion that negotiations would have been futile and

rior Court judge's holding in *City of Dover v. Cartanza* that compliance with RPAA guidelines is "directory rather than mandatory."[15] Because the RPAA's guidelines are "directory," failure to comply with them "is not a jurisdictional defect requiring automatic dismissal whenever it is raised. It is instead a defense or objection to the taking. . . ."[16]

■ Once a defendant in a condemnation proceeding establishes noncompliance with the RPAA,[17] the condemning agency may attempt to "demonstrate a valid excuse for its failure to follow the RPAA's policies."[18] Valid "[e]xcuses include the agency's good faith efforts to comply with the policies or a showing that compliance would have been futile."[19] Another Superior Court judge has concluded that a judge should excuse an agency's noncompliance if the judge "is satisfied that the departure from the RPAA guidelines had no impact on the negotiations and did not otherwise frustrate" the RPAA's purpose.[20] If the agency cannot demonstrate a valid excuse for its noncompliance, "the appropriate remedy . . . is dismissal without prejudice."[21]

Under the RPAA, DelDOT must make "[e]very reasonable effort . . . to acquire" property through negotiation rather than condemnation proceedings.[22] Section 9505(2) requires that DelDOT obtain an appraisal of the real property it wants to acquire before initiating negotiations.[23] Section 9505(3) requires that DelDOT establish an amount "reasonably believed [to be] just compensation" before initiating negotiations to purchase the property[24] and that DelDOT's initial offer cannot "be less than the approved appraisal of the [property's] fair market value."[25]

Few cases address an appraisal's validity as it relates to DelDOT's duties under Section 9505(3). In *State v. Teague*, the property owners opposed DelDOT's condemnation proceeding because DelDOT's road redesign and median placement would no longer permit northbound drivers to make a left turn directly into their store's parking lot.[26] They argued that DelDOT violated the RPAA because its appraisal was invalid for two reasons: (1) the appraiser did not account for the possibility that the parcel would be rezoned and (2) the appraiser used the wrong valuation method.[27]

therefore the city's failure to comply with the RPAA was properly excused).

15. *Cartanza*, 541 A.2d at 583.

16. *Id.* (citing 10 *Del. C.* § 6107).

17. *State ex rel. the Sec'y of the Dep't of Admin. Servs. v. Dorzback*, 1991 WL 89887, at *2 (Del.Super. May 28, 1991) ("The initial burden of establishing non-compliance rests on the defendant.").

18. *Cartanza*, 541 A.2d at 583.

19. *Id.*

20. *State ex rel. the Sec'y of the Dep't of Transp. v. Teague*, 2009 WL 929935, at *3 (Del.Super. Apr. 3, 2009).

21. *Cartanza*, 541 A.2d at 584. "Should good faith efforts to comply with the RPAA not result in an agreement between the parties, the [agency] may commence another condemnation action." *Id.*

22. 29 *Del. C.* § 9505(1).

23. *Id.* § 9505(2).

24. *Id.* § 9505(3).

25. *Id.*

26. *State ex rel. the Sec'y of the Dep't of Transp. v. Teague*, 2009 WL 929935, at *1 (Del.Super. Apr. 3, 2009).

27. *Id.* at *2.

Addressing the rezoning issue, the Superior Court judge determined that even if the property owner had informed the appraiser about efforts to rezone the property, that information would not have affected the appraiser's analysis.[28] The property was subject to a deed restriction that limited its commercial use to an auto parts store, and that covenant would remain in place even under the proposed rezoning.[29] Therefore, the judge determined that the appraiser's failure to analyze the rezoning did not materially affect negotiations or the reasonableness of DelDOT's offer because the property's highest and best use would remain unchanged, thereby rendering any error immaterial.[30]

Turning to the valuation issue, the Superior Court judge emphasized that during the first stage of a condemnation proceeding,[31] determining an appraisal's validity requires a good faith analysis, not a final valuation analysis.[32] DelDOT's testimony indicated that it chose to appraise the property using the "strip" method because the method for which the plaintiffs argued—the "before and after" method—

"would have yielded a negligible diminution in the [remainder parcel's] value." [33] "Given that DelDOT . . . opted to use the valuation method more generous to the" plaintiffs, the Superior Court judge found that DelDOT "satisfied its obligation to make a good faith offer," thereby excusing any possible error based on DelDOT's choice of valuation method.[34]

 In this case, the Superior Court judge ruled that DelDOT made its $133,100 offer "in good faith" because DelDOT supported its offer "by an appraisal from a qualified appraiser and there [wa]s nothing in the record so far as [he could] tell to dispute it." [35] However, the judge should have considered that the Appraisal assumes (correctly) that, before the taking, the Property is zoned as CR, Regional Commercial District,[36] but he then valued the property (incorrectly) after the taking as though it were still CR-zoned and that its "maximally productive and indicated highest and best use . . . [wa]s for commercial redevelopment." [37] The record is clear that DelDOT regulations require a driveway significantly wider than twelve

28. *Id.* at *8.

29. *Id.*

30. *Id.*

31. The Condemnation Act, located in title 10, chapter 61 of the Delaware Code, requires parties to a condemnation proceeding first to resolve whether a taking is permissible, and only once the trial judge determines the taking is permissible can the parties proceed to trial over just compensation. During the initial portion, the condemnation proceeding, the condemning agency must file a complaint containing (1) "a short and plain statement of the authority for the taking;" (2) "the use for which the property is to be taken consistent with § 9501A of Title 29;" (3) "the compliance with § 9505(15) of Title 29;" (4) "a description of the property sufficient for its identification;" (5) "the interest to be acquired;" and (6) "a designation of the defendants who have been joined as owners there-

of." 10 *Del. C.* § 6105(b). The property owners must then file an answer containing "[a]ny objection or defense to the taking of the property." *Id.* § 6107. Only after the Superior Court judge disposes of all of the objections and defenses will the action "proceed to the trial of the issue of just compensation." *Id.*

32. *Teague*, 2009 WL 929935, at *7.

33. *Id.*

34. *Id.*

35. *State ex rel. the Sec'y of the Dep't of Transp. v. Lawson*, C.A. No. N12C–01–128, at 39–40 (Del.Super. Mar. 15, 2012) (TRANSCRIPT).

36. App. to Opening Br. A–353.

37. *Id.* at A–377.

feet in order for a property owner to obtain a commercial entrance permit.[38]

The Appraisal's basic assumptions were facially flawed, and the Lawsons immediately indicated their concern, during their September 12, 2011, meeting with DelDOT (the same day DelDOT made its offer), that their twelve-foot-wide relocated driveway would not be sufficient for a commercial entrance.[39] The Lawsons reiterated their concern on October 12 and informed DelDOT that the engineers they had consulted confirmed that concern—the new driveway would not be suitable for future development as a commercial entrance.[40]

On October 21, 2011, DelDOT indicated that its Appraisal "covered all [the Lawsons'] questions."[41] We disagree. The Appraisal cannot establish an amount which is "reasonably believed [to be] just compensation" because it fails to consider how the Lawsons' reduced ability (or inability) to obtain a commercial entrance permit after the taking affects the Remainder's "highest and best use" for valuation purposes.

The Lawsons attached to their motion to dismiss a copy of Delaware Administrative Code title 2, regulation 2309.[42] That regu-

---

38. *See, e.g.,* 2 Del. Admin. C. § 2309.

39. App. to Opening Br. A–161.

40. *Id.* at A–162.

41. *Id.* DelDOT argues in its Answering Brief that the Lawsons' failure to obtain their own competing appraisal somehow prevents them from objecting to DelDOT's Appraisal. Answering Br. 26. However, the Superior Court judge only considered that failure when he analyzed DelDOT's duty to negotiate in good faith under Section 9505(1). *State ex rel. the Sec'y of the Dep't of Transp. v. Lawson,* C.A. No. N12C–01–128, at 39 (Del.Super. Mar. 15, 2012) (TRANSCRIPT) ("I believe that there have been adequate negotiations in this case in the sense that the State has been willing to reconsider its offer upon being supplied with information by the owners that would allow it to reconsider the offer or to[—]and for whatever reason, primarily I guess cost, the owners haven't supplied that. But I can't expect the State to move off its number until it receives something in exchange that would cause it to do that other than simply an intransigent: You owe us for the entire property."); *see also State ex rel. the Sec'y of the Dep't of Transp. v. Teague,* 2009 WL 929935, at *5 (Del.Super. Apr. 3, 2009) (addressing a property owner's objection that DelDOT failed to negotiate in good faith and noting that the plaintiffs did not submit a counteroffer to DelDOT during negotiations, "provide a rationale to DelDOT why their property was worth more than DelDOT's offer," or obtain their own appraisal of their property despite indicating during negotia-

tions they would); *cf. State ex rel. the Sec'y of the Dep't of Transp. v. Amin,* 2007 WL 1784187, at *5 (Del.Super. Apr. 26, 2007) (finding that when DelDOT moved for condemnation two months after its initial offer because the property owners did not submit a counteroffer, DelDOT failed to negotiate in good faith because (1) the property owners specifically explained to DelDOT that they could not respond to DelDOT's offer until the underlying access and relocation issues were resolved and they would need to obtain an appraisal, (2) DelDOT continued to negotiate concerning the nonprice issues during those two months, and (3) DelDOT moved for condemnation "without requesting a counter offer … and without explaining that the [access and relocation proposals] were off the table (which would have [caused] the [property owners] to get an appraisal)"). Because we decide this case under Section 9505(3)'s requirements, rather than DelDOT's duty to negotiate under Section 9505(1), we do not address whether a property owner must support his counteroffer with an appraisal before DelDOT is required to continue negotiation. However, for the purposes of analyzing whether DelDOT's Appraisal satisfies Section 9505(3), a property owner may challenge an appraisal's validity without obtaining a competing appraisal.

42. Defendants Jack W. Lawson and Marry Ann Lawson's Opposition to Motion for Possession and Motion to Dismiss Exhibit D, *Lawson,* C.A. No. N12C–01–128 (Del.Super. Feb. 16, 2012).

lation indicates that a commercial entrance to the property would require a driveway significantly wider than the twelve-foot-wide relocated residential driveway Del-DOT offered to build the Lawsons.[43] Del-DOT's response seemed to be that the Lawsons could just petition DelDOT for a commercial entrance permit to widen their driveway (which would have been necessary even without the taking).[44] However, the Superior Court judge did not address the Lawsons' point that, in order to widen the entrance after the taking, the Lawsons would need to expand the earthen berm upon which the Lawsons' relocated driveway would be built, an expansion that would necessarily encroach upon DelDOT's stormwater management area.[45]

Contrary to the Superior Court judge's factual determination that nothing in the record disputed DelDOT's Appraisal,[46] the record clearly shows that the taking would severely compromise the Lawsons' ability to use their property at a commercial regional level, its highest and best use and the basis for the Appraisal. Because the record does not support the trial judge's factual determination that the appraisal

was indisputable, that conclusion is clearly erroneous.

Here, unlike the *Teague* taking, the Lawsons' highest and best use of the Remainder is significantly altered based on DelDOT's current plans to relocate the Lawsons' driveway to a twelve-foot-wide earthen berm. The Appraisal failed to consider that fact. Also unlike the situation in *Teague*, DelDOT did not use an appraisal method more generous to the Lawsons, such as considering what the Remainder's fair market value would be if its highest and best use were limited to residential use under DelDOT's current plans. Furthermore, we cannot conclude that negotiations would have been futile because the Lawsons' consistent opposition to DelDOT's offer centered on DelDOT's failure to address the Lawsons' concern that they would be unable to expand their residential driveway for future commercial use. The record is clear that DelDOT's continued reliance on its obviously flawed Appraisal frustrated the parties' negotiations.

We hold that DelDOT violated RPAA Section 9505(3) when it relied on its Ap-

**43.** 2 Del. Admin. C. § 2309

**44.** *Lawson*, C.A. No. N12C–01–128, at 21–22, 26 (Del.Super. Mar. 15, 2012) (TRANSCRIPT). While DelDOT attempted to argue before the Superior Court judge that its engineer disagreed with the Lawsons' contentions that they could not widen the proposed relocated driveway, *see* Affidavit of Marc Coté at 1, 2, *Lawson*, C.A. No. N12C–01–128 (Del.Super. Mar. 9, 2012) (disagreeing with the Lawsons' "contention that it would be impossible for a commercial entrance to be approved by DelDOT on the remainder of the Lawson property after the taking" because driveway width is not "solely determinative" of the issue and that "[t]here are reasonable circumstances under which a commercial entrance could be approved on the [R]emainder," but without describing what those "reasonable circumstances" might be), DelDOT did not

ask its engineer to analyze the Lawsons' concern until after it began the condemnation proceeding, *see id.* (implicitly indicating that DelDOT obtained the affidavit sometime after it initiated condemnation proceedings because although the affidavit is undated, Coté noted he reviewed the Lawsons' motion to dismiss, which they filed on February 16, 2012).

**45.** *Lawson*, C.A. No. N12C–01–128, at 18–19 (Del.Super. Mar. 15, 2012) (TRANSCRIPT). It is clear to us that there is a meaningful distinction between asking DelDOT to approve a widening of the Lawsons' driveway when the land required to do so is unimproved versus when the land would require eliminating a portion of a DelDOT stormwater retention pond.

**46.** *Id.* at 39–40.

praisal, which did not take into account that DelDOT's proposed driveway significantly reduced the Lawsons' ability to commercially develop their Remainder. DelDOT has not established that we should excuse its noncompliance. The appropriate remedy is dismissal without prejudice.

## IV. CONCLUSION

Therefore, we REVERSE the Superior Court's judgment, VACATE the Superior Court's Orders, and REMAND with instructions to dismiss without prejudice. Jurisdiction is not retained.