**ALLEN FAMILY CORPORATION,**
**Plaintiff,**

**v.**

**CITY OF KANSAS CITY, MO., et al., Defendants.**

**No. 76–CV–239–W–5.**

United States District Court,
W. D. Missouri, W. D.

June 30, 1981.

Charles C. Shafer, Jr., Kansas City, Mo., for plaintiff.

Walter J. O'Toole, Asst. City Atty., Kansas City, Mo., for defendants.

OPINION AND ORDER

SCOTT O. WRIGHT, District Judge.

I

This action, founded upon federal question jurisdiction, 28 U.S.C. § 1331, is one

alleging inverse condemnation pursuant to the Fifth and Fourteenth Amendments to the United States Constitution. The plaintiff is a closely-held family corporation which owns a 150-acre farm in Kansas City, Platte County, Missouri. The defendants are the City of Kansas City, Missouri and Robert Hodge, Carl Migliazzo, and Jeremiah Cameron, the latter individuals all being sued in their capacities as commissioners of the Kansas City Park Board. The issue presented by this action, in abbreviated form, is whether the City's public dissemination of proposed plans to construct a city park in an area encompassing plaintiff's farm, and which has allegedly made the plaintiff's farm unmarketable, constitutes a "taking" by the City under an inverse condemnation theory.

## II

At this juncture of the case the sole issue for the Court's determination is whether, as a matter of law, defendants may be held liable for an inverse condemnation of plaintiff's land. The parties generally agree as to the material facts but disagree as to the legal effect of those facts. Thus, each side has moved for summary judgment and the parties have agreed that the issue of liability may be determined by the Court without the necessity of a trial or hearing. The Court has considered each movant's motion on an individual and separate basis and, following a consideration of the facts of this case in light of pertinent case law, has concluded that summary judgment should be entered in favor of defendants. 10 Wright & Miller, *Federal Practice & Procedure*, § 2720 at 464 (1973). In determining the issue of liability against the plaintiff, the Court has considered the material facts in the light most favorable to plaintiff.

## III

During all relevant times the 150-acre Allen farm has been owned by the Allen family and used for agricultural purposes. The farm is legally described as the Southeast Quarter, except the 10 acres at the south end, Section four, Township 51, Range 34, Platte County, Missouri. This location is just south of the Kansas City International Airport.

In the years 1965 and 1973 the City had under consideration separate proposals for the dedication and construction of a City park to be known as Tiffany Springs Park.[1] The Allen family farm lies within the boundaries of the proposed Tiffany Springs Park. The plans for this park, however, have never been officially approved by the City Council. But in 1974, the City's Development Department submitted another proposal to the City Council which was referred to as the "Northland Development Plan." This plan also contemplated that the Allen farm would be encompassed by Tiffany Springs Park and the plan was widely discussed by the media. The City Council initially referred the Plan to a committee and then finally "killed" the Plan on January 16, 1976.[2]

Based on the foregoing, plaintiff contends that there has been a "taking" of its property. Allen does not contest the fact that the City has made no physical invasion of its land. Rather, Allen asserts that the publication of the 1965 and 1973 reports and the publicity associated with the 1974 Northland Development Plan amount to an inverse condemnation of the farm by the City. Plaintiff states that the Allen farm has been for sale on the market since 1974 but, despite the overwhelming demand and sales which have occurred in recent years for farm real estate, plaintiff has been unable to obtain even a reasonably fair bid for the property.

1. The first plan, published in January, 1965, was entitled "Plan for Major Parks, Boulevards, Parkways and Greenways for Kansas City, Missouri—A Unit of the Master Plan." Then in January, 1973, the City published the "Plan for Parks, Playgrounds, Boulevards, Parkways and Open Space for Kansas City, Missouri—A Unit of the Master Plan." Both of these plans were published by the City's Park Department and the City Planning Department.

2. The plan was introduced as Ordinance No. 44767 and, if passed, would have indicated that the City had adopted that particular plan as a guide for the development of the Kansas City North area.

## IV

The Fifth and Fourteenth Amendments guarantee that private property shall not be taken for public use without "just compensation" and "due process" of law. The law is clear that there need not always be an actual physical invasion for a "taking" to occur. Governmental interference with a person's use, enjoyment, and other rights of property ownership, under certain circumstances, can constitute a taking for purposes of inverse condemnation. 29A C.J.S. Eminent Domain § 110 (1965). However, no precise rule determines when property has been taken. *See United States v. Central Eureka Mining Company*, 357 U.S. 155, 78 S.Ct. 1097, 2 L.Ed.2d 1228 (1958). Among other things, this determination requires a weighing of competing private and public interests. *Agins v. City of Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). In the present case the City's planning activities for future parks substantially further the important governmental goal of encouraging orderly growth of a metropolitan area. If a city could not generate preliminary ideas for future development of the area and receive public reaction to those preliminary plans, the results could be disastrous. This is especially true in the area of planning and providing for parks since this is almost totally a governmental function. To force a city to fully condemn and pay for any properties which were mentioned in a preliminary plan would circumvent the whole planning phase of governmental decision-making and would lock the city into a specific plan which might not have significant public support.

Balanced against the public interest in governmental planning is the private landowner's interest in the uninterrupted use and enjoyment of his property. This interest has been infringed upon here because Allen cannot sell its land at a reasonable price due to public knowledge of the City's plans. However, the Supreme Court in *Agins v. City of Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), held that mere fluctuations in value during the process of governmental decision-making, absent extraordinary delay, are simply "incidents of ownership. They cannot be considered as a taking in the constitutional sense."

Upon first glance it might appear that Allen could find some solace in the "extraordinary delay" exception to the above-mentioned rule. Unfortunately for plaintiff, this is not the case. The extraordinary delay exception is used to determine the amount of compensation the landowner should receive if the value of the affected property decreases during the pendency of the condemnation proceedings. Its purpose is to prevent the government from instituting actual condemnation proceedings and then put the proceedings on hold, thus driving down the land's value and allowing the governmental entity to finally purchase the land at a drastically reduced price when condemnation is completed. But in the present case, Kansas City has not instituted condemnation proceedings. In fact, the City's preliminary plans have never even been formally approved by the City Council.

The cases Allen relies upon in support of its motion for summary judgment are all woven from the same cloth. *See, e. g., Haczela v. City of Bridgeport*, 299 F.Supp. 709 (D.Conn.1969); *Foster v. City of Detroit, Michigan*, 254 F.Supp. 655 (E.D.Mich. 1966); *Drakes Bay Land Company v. United States*, 424 F.2d 574 (Ct.Cl.1970); *Madison Realty Company v. City of Detroit*, 315 F.Supp. 367 (E.D.Mich.1970). They are all cases where either an elected governing body specifically has approved of actions affecting the subject property or the governmental unit has engaged in overt activities which render the property itself no longer fit for the prior existing use to which it had been put. Neither of these conditions is present in the case before the Court.

Not only has the City Council declined to adopt the preliminary plans conceived by one of its departments, but they actually "killed" the adoption of the plan, see Note 2 supra. The prior existing use of the Allen farm has not been harmed and the agricultural capability of the land has not been

impaired by the defendants' actions. Under these circumstances, the balance of public versus private interests clearly tips toward the City.

A case presenting a factual situation very similar to the present one is *NBH Land Company v. United States*, 576 F.2d 317 (Ct.Cl.1978). In that case responsible military officers at the Fort Carson Military Reservation proposed that the Reservation be expanded to cover plaintiff's land. Although Congress was asked for authority and funds to acquire such lands, the proposal was ultimately rejected. While the proposed expansion was under consideration, however, military officers disclosed the scheme to local interests and caused many persons to change their development plans with regard to the plaintiff's land. Plaintiff claimed that its land was effectively "taken" because the Army's conduct destroyed its marketability.

Although the plaintiff's claim was denied on the basis of the Tucker Act, 28 U.S.C. § 1491, the court dealt with the plaintiff's constitutional taking argument with reasoning that can be applied to the case at hand:

> [T]he military notified the local people of their plan, and urged that the local plans conform. If we are to have the kind of open society we all wish to inhabit, what is wrong with that? Should the military have kept their plans secret, obtained the necessary authorization, and sprung it on the local people as a bolt from the blue, there would have been a valid ground for complaint. Mere candor by public officials about their plans has never been held to constitute a taking. Even "a threat of condemnation is not a taking . . . ."

576 F.2d at 319 (citation omitted).

■ This reasoning is pertinent to the present case. To impose liability upon a city for mere planning activities would undoubtedly inhibit important and necessary governmental functions. In accordance with this line of reasoning, the Eighth Circuit has held that initial steps authorizing condemnation, even if such steps result in a decline in land values, does not constitute a taking requiring compensation to be given to the landowner. In order for governmental action short of acquisition to constitute a taking, its effects must be so complete as to deprive the owner of all or most of his interest in the land. *Thomas W. Garland, Inc. v. City of St. Louis*, 596 F.2d 784 (8th Cir. 1979). Here, Kansas City's actions were not so complete as to deprive the Allen Corporation of all or most of its interest in the farm. Accordingly, for the reasons stated herein, it is hereby

ORDERED that defendants' motion for summary judgment be, and is hereby, granted and judgment is hereby entered in favor of defendants and against plaintiff. It is further

ORDERED that plaintiff's motion for summary judgment be, and is hereby, denied. Each party shall bear their own costs.