**Sylvia V. BARSKY, Plaintiff,**

v.

**CITY OF WILMINGTON and Christina Gateway Corp., Defendants.**

**Civ. A. No. 83–198 MMS.**

United States District Court,
D. Delaware.

Dec. 30, 1983.

As Amended Jan. 12, 1984.

Douglas B. Canfield, Jacobs & Crumplar, Wilmington, Del., for plaintiff.

Julianne E. Hammond, Asst. City Sol., Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Plaintiff filed this suit against the City of Wilmington and the Christina Gateway Corporation, a non-profit Delaware corporation. Plaintiff seeks compensatory damages, claiming that defendants violated her fourteenth amendment rights and her rights under Article 1, section 8 of the Delaware Constitution. Presently before the Court is defendants' motion to dismiss the complaint.

### Background

Plaintiff's alleged constitutional injury involves property located at 232–234 King Street in Wilmington, Delaware.[1] Accord-

ing to her complaint, in the spring of 1982, plaintiff had "a firm offer to buy the above mentioned property and was ready to consummate the sale" when defendants announced that they were going to exercise their eminent domain powers for an urban renewal project and acquire land "in an area including that held by plaintiff." (Doc. 1 at 2). Plaintiff alleges that "as a result of defendants' announcements" of condemnation, she was not able to consummate her prospective sale, has been unable to rent her King Street property, and has been "substantially deprived of [the] beneficial use and enjoyment of her property." *Id.*

Before reaching the merits of defendants' motion, the Court must first resolve a dispute over what causes of action are covered by plaintiff's complaint. Count I alleges that "defendants have deprived plaintiff of her property without due process of law, in violation of the 14th Amendment to the U.S. Constitution." In Count II, plaintiff alleges that "defendants, under color of State law, have deprived plaintiff of her rights secured by the Constitution of the United States in violation of 42 U.S.C. § 1983."[2] Defendant sensibly reads plaintiff's complaint to contain a narrow cause of action for a deprivation of property in violation of plaintiff's procedural due process rights. Although it is not mentioned in the complaint, plaintiff argues in her brief that there are actually two fourteenth amendment claims: (1) a taking of property without just compensation in violation of the fifth amendment as applied to the states through the due process clause of the fourteenth amendment, and (2) a deprivation of property without due process of law. (Doc. 8 at 4). According to plaintiff, the "simplified notice pleading" policy of the federal rules obviates any need to mention the fifth amendment claim in her complaint. (Doc. 8 at 6). While plaintiff's argument stretches Rule 8

---

1. Plaintiff is involved in a bankruptcy reorganization and, under the terms of her plan, is required to sell the King Street property.

2. Count III involves a pendent state law cause of action, under Article 1, section 8 of the Delaware Constitution, for a taking of property without compensation.

far beyond its intended purpose, the Court, for purposes of resolving this motion, will construe plaintiff's complaint as containing both causes of action.[3]

In deciding a motion to dismiss a complaint for failure to state a claim, the Court's "task is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court must take all of the well-pleaded allegations as true, construe the claims in the light most favorable to plaintiff, and determine whether, under any reasonable reading of the pleading, she might be entitled to relief. *See Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. at 236, 94 S.Ct. at 1683. For the reasons stated, the Court will dismiss the complaint.

*Fifth Amendment Claim*

The troublesome constitutional questions surrounding urban redevelopment programs are legion. When an urban renewal plan is announced and areas are designated for condemnation, predictable changes occur in the neighborhoods to be appropriated. *See Sayre v. City of Cleveland*, 493 F.2d 64, 68 (6th Cir.), *cert. denied*, 419 U.S. 837, 95 S.Ct. 65, 42 L.Ed.2d 64 (1974). Tenants depart the area, owners refuse to make improvements, property sales and rentals become difficult, and mortgage money becomes scarce. *Id.* at 69. Whatever value the property may have had prior to public notice of a development project rapidly diminishes. It is thus apparent that landowners are in a practical sense "deprived" of property well before the renewal program reaches their parcel. The question presented by this case is whether plaintiff's alleged injury, which the Court must assume was caused by the City's public announcement of plans to begin a renewal project in an area encompassing plaintiff's property, constitutes a "taking" of property within the meaning of the Constitution.

■ Ordinarily, a taking of property occurs when a governmental body uses its eminent domain power to institute formal condemnation proceedings or when it physically appropriates property for public use. Courts have also recognized, however, that governmental action, which directly and substantially interferes with property rights, can constitute a "constructive" or "de facto" taking even though no physical invasion or legal restraint is involved. *See, e.g., United States v. Causby*, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946); *Richmond Elks Hall Association v. Richmond Redevelopment Agency*, 561 F.2d 1327 (9th Cir.1977).

> [T]o constitute a taking under the Fifth Amendment it is not necessary that property be absolutely 'taken' in the narrow sense of that word to come within the protection of this constitutional provision; it is sufficient if the action by the government involves a direct interference with or disturbance of property rights.... Nor need the government directly appropriate the title, possession or use of the properties....

*R.J. Widen Co. v. United States*, 357 F.2d 988, 174 Ct.Cl. 1020 (1966) (citations omit-

---

**3.** The claims in Count I are brought directly under the fourteenth amendment. These claims are premised on the assumption that there is an implied cause of action for damages under the fourteenth amendment. However, neither the Supreme Court, *see Mount Healthy School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278, 97 S.Ct. 568, 571, 50 L.Ed.2d 471 (1977), nor the Third Circuit Court of Appeals, *see Gagliardi v. Flint*, 564 F.2d 112, 115–16 (3d Cir.1977), *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978), has decided whether such a cause of action exists. In *Rogin v. Bensalem Township*,

616 F.2d 680 (3d Cir.1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981), the Court of Appeals held that where, as here, a litigant alleges a section 1983 cause of action based on constitutional claims, there is no need to imply a cause of action directly under the fourteenth amendment. *Id.* at 686–87. Accordingly, plaintiff's claims in Count I will be dismissed and the Court will consider whether Count II states a valid section 1983 cause of action for violation of rights secured by the fifth and fourteenth amendments.

ted). *But see City of Buffalo v. J.W. Clement Co.,* 28 N.Y.2d 241, 321 N.Y.S.2d 345, 269 N.E.2d 895 (1971) (de facto taking requires a showing of physical invasion or direct legal constraint on the property).

Courts have applied the constructive taking doctrine to compensate landowners injured by the administration of an urban renewal project.[4] *See, e.g., Thomas W. Garland, Inc. v. City of St. Louis,* 596 F.2d 784, 787 (8th Cir.), *cert. denied,* 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979); *Richmond Elks Hall Association v. Richmond Redevelopment Association,* 561 F.2d 1327 (9th Cir.1977). To establish such a cause of action, there must be a direct and substantial interference with property rights caused by extraordinarily delayed condemnation proceedings or other unreasonable conduct on the part of the condemning authority. *See Thomas W. Garland, Inc. v. City of St. Louis,* 596 F.2d 784 (8th Cir.1979) (5 year delay); *Richmond Elks Hall Association v. Richmond Redevelopment Association,* 561 F.2d 1327 (9th Cir.1977) (six year delay; condemnation proceedings abandoned); *Benenson v. United States,* 548 F.2d 939, 212 Ct.Cl. 375 (1977) (ten year delay); *Foster v. City of Detroit,* 254 F.Supp. 655 (E.D.Mich. 1966), *aff'd,* 405 F.2d 138 (6th Cir.1968) (ten year delay; condemnation abandoned then recommenced). *Cf. Agins v. City of Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (one year delay before condemnation proceeding was abandoned held not to constitute a de facto taking); *Thompson v. Tualatin Hills Park & Recreation District,* 701 F.2d 99 (9th Cir.1983) (same). Absent delay or other unreasonable conduct amounting to an abuse of eminent domain authority, "economic loss caused by renewal does not constitute a taking within the meaning of the fifth and fourteenth amendments." *Sayre v. City of Cleveland,* 493 F.2d 64, 69 (6th Cir.), *cert. denied,* 419 U.S. 837, 95 S.Ct. 65, 42 L.Ed.2d 64 (1974).[5] *Accord Agins v. City of Tiburon,* 447 U.S. at 263 n. 9, 100 S.Ct. at 2143 n. 9.

**4.** The prior rule was that absent a statute imposing liability on the renewal authority, damages suffered by a property owner as a result of condemnation proceedings were *damnum absque injuria. See* 4 J. Sackman & P. Rohan, *Nichols' The Law of Eminent Domain* § 12.-3151[5] at 12–475 to 12–515 (Rev.3d ed. 1981). The trend away from this concept was initiated in the "condemnation blight" cases, in which properties designated for renewal suffered drastic physical deterioration prior to formal appropriation. In order to justly compensate landowners for these interim losses, courts have taken two approaches. In some cases, the condemnee is compensated at the time of the statutory award, under the so-called "condemnation blight principle," for the "loss in value traceable to grossly premature disclosure of the condemnation (or other seriously value-depressing acts of the condemnor), prior to the actual taking of the property." *Id.* at 12–475. In other cases, courts have characterized the renewal authority's conduct as a de facto taking and have awarded compensation "as of the date the condemnor substantially interfered with the owner's property" rights. *Id.* The net effect of this approach is to move forward the date of acquisition to reflect the actual taking which preceded the legal taking. *Id.* These competing approaches have generated considerable confusion among the courts. *Id.* at 12–476. *See City of Buffalo v. J.W. Clement Co.,* 28 N.Y.2d 241, 321 N.Y.S.2d 345, 269 N.E.2d 895 (1971) (distin-guishing condemnation blight principles from the concept of a de facto taking). The federal cases have equated the two concepts creating ambiguity and debate over what conduct constitutes a de facto taking. *See, e.g., Foster v. City of Detroit,* 254 F.Supp. 655, 663–667 (E.D.Mich. 1966), *aff'd,* 405 F.2d 138 (6th Cir.1968).

**5.** The seminal case in this area is *Foster v. City of Detroit,* 254 F.Supp. 655 (E.D.Mich.1966), *aff'd,* 405 F.2d 138 (6th Cir.1969). In that case the court held that a de facto taking had occurred where the City commenced condemnation proceedings and kept its *lis pendens* in effect for five years after the urban renewal project was stopped, abandoned the condemnation proceedings after ten years and then commenced new proceedings. A de facto taking was found because after delaying and then abandoning the condemnation proceeding, the City instituted new proceedings based on the lower values of vacant property in a blighted area. There was substantial evidence that the City actually encouraged and aggravated the deterioration after commencing the condemnation proceedings. *Id.* at 662. The purpose of applying a de facto taking in this context is to protect the property owner and give full content to the "just compensation" clause by penalizing the municipality's pre-condemnation delays. The *Foster* rule, in actuality, compensates the property owner by incorporating condemnation blight principles into the taking analysis.

■ In light of these principles, the Court concludes that plaintiff's complaint must be dismissed. Her fifth amendment claim as stated does not involve excessive delay in the condemnation proceedings or lack of diligence on defendants' part. Plaintiff's specific claim focuses only on the adverse effect of defendants' public announcement of an impending renewal program. It is well established, however, that mere announcements and other steps initiating condemnation falls far short of that required for establishing a constitutional claim. *See generally* 4 J. Sackman & P. Rohan, *Nichols' The Law of Eminent Domain* § 12.3151[5] (Rev. 3d ed. 1981). The rationale applied by the Supreme Court in *Agins v. City of Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), supports this conclusion. In that case the City initiated condemnation proceedings but abandoned them after a year, reimbursing Agins for costs incurred in connection with the action. *Id.* at 257–58 n. 1, 100 S.Ct. at 2139–40 n. 1. Agins argued that the City's pre-condemnation activities, including the enactment of legislation and public disclosure of interim planning decisions, as well as the filing of an eminent domain action were so unreasonable as to constitute a taking. The California Supreme Court rejected the argument and concluded that "[g]eneral land use planning decisions and related decision making must be both unhampered and public. Together or singly, neither process constitutes a 'taking' of property." *Agins v. City of Tiburon*, 24 Cal.3d 266, 157 Cal.Rptr. 372, 598 P.2d 25, 31 (1979). The United States Supreme Court agreed:

> The State Supreme Court correctly rejected the contention that the municipality's good-faith planning activities, which did not result in successful prosecution of an eminent domain claim, so burdened the appellants' enjoyment of their property as to constitute a taking. . . . Even if the appellants' ability to sell their property was limited during the pendency of the condemnation proceeding, the appellants were free to sell or develop their property when the proceedings ended.

Mere fluctuations in value during the process of governmental decisionmaking, absent extraordinary delay, are "incidents of ownership. They cannot be considered as a 'taking' in the constitutional sense." . . .

447 U.S. at 263 n. 9, 100 S.Ct. at 2143 n. 9 (citations omitted). *Accord Danforth v. United States*, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240 (1939) (mere enactment of legislation or the initiation of a project cannot constitute a taking in the constitutional sense); *Reservation Eleven Associates v. District of Columbia*, 420 F.2d 153 (D.C. Cir.1969) (the announcement of governmental planning does not constitute a compensable taking); *Allen Family Corp. v. City of Kansas City, Missouri*, 525 F.Supp. 38 (W.D.Mo.1981) (same); *Hempstead Warehouse Corp. v. United States*, 98 F.Supp. 572, 120 Ct.Cl. 291 (1951) (the threat of condemnation does not constitute a taking).

■ Strong policy considerations support the rule that a mere announcement of a proposed condemnation plan does not constitute a de facto taking of property. In the urban renewal setting open and public decision-making is a necessary element of rational city planning. *See NBH Land Co. v. United States*, 576 F.2d 317, 217 Ct.Cl. 41 (1978); *Allen Family Corp. v. City of Kansas City, Missouri*, 525 F.Supp. at 40; *City of Buffalo v. J.W. Clement Co.*, 28 N.Y.2d 241, 321 N.Y.S.2d 345, 269 N.E.2d 895 (1971). To hold that a de facto taking occurs at the moment an announcement is made would disrupt the planning process and impose an oppressive and unwarranted burden upon municipalities. Such an approach would have the perverse effect of exposing the condemning authority to substantial liability long before the public feasibility and cost of a project could be ascertained. *See Danforth v. United States*, 308 U.S. at 284–85, 60 S.Ct. at 236–37. The de facto taking doctrine was never intended to penalize a municipality for publicizing its land use decisions. The Court therefore holds that, in the circumstances of this case, the defendants' announcement of its proposed condemnation program does

not constitute a taking of property requiring immediate compensation for plaintiff's property. Plaintiff must wait for the formal condemnation process to unfold in state court.

### Procedural Due Process

 Plaintiff's second claim alleges that defendants' public announcements violated procedural due process.[6] According to her brief "[t]he least that defendants could have done would have been to notify Plaintiff that they were going to make an announcement regarding the condemnation of her property. This at least would have given Plaintiff an opportunity to sell the property before the announcement came out." (Doc. 8 at 19). These allegations do not state a recognized cause of action under the fourteenth amendment.[7] The Court declines to craft a rule that will promote unequal bargaining relations in property transactions.

### State Claim

Since all federal claims against defendants are dismissed, the state law claims against these parties will also be dismissed. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### Conclusion

Defendants' motion to dismiss the complaint will be granted.

---

**6.** Defendants, citing *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), contend that plaintiff has failed to state a valid cause of action because there are adequate post-deprivation remedies available in state court. Defendants' argument is without merit. Whatever the limits of *Parratt* may be, that case does not apply to deprivations which "occur as a result of some established state procedure." *Id.* at 543, 101 S.Ct. at 1916. In this case it is clear that plaintiff's alleged "injury" was caused by the defendants' procedure for announcing its land use plans. *See, e.g.,* 22 *Del.C.* § 107 (1981).

**7.** Plaintiff also claims that due process requires defendants to file a condemnation action rather than announce a plan to condemn. This argument is frivolous. A pending condemnation action would result in the same restraint on plaintiff's ability to alienate her property.