**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

| | |
|---|---|
| STATE OF DELAWARE, upon the Relation of the Secretary of the DEPARTMENT OF TRANSPORTATION<br>Plaintiff,<br><br>v.<br><br>MIDDLETOWN DEVELOPMENT, INC., a Delaware Corporation; 5.6080 ACRES OF LAND, more or less, as a Fee Simple Taking, situate in the Town of Middletown, New County, Delaware; 0.0221 ACRE OF LAND, more or less, as a Temporary Construction Easement Taking, situate in the Town of Middletown, New Castle County, Delaware; and MIDDLETOWN APARTMENTS PHASE I, LLC, a Delaware Limited Liability Corporation,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>) C.A. No. N14C-10-295 PRW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Submitted: February 18, 2015
Decided: March 10, 2015

### OPINION

*Upon Plaintiff's Motion for Possession*,
**GRANTED.**

*Upon Defendants' Motion to Dismiss*,
**DENIED.**

Gregory B. Williams, Esquire, Fox Rothschild LLP, Wilmington, Delaware, Attorney for Plaintiff.

L. Vincent Ramunno, Esquire, Ramunno & Ramunno, P.A., Wilmington, Delaware, Attorney for Defendants.

**WALLACE, J.**

## I. INTRODUCTION

The Delaware Department of Transportation ("DelDOT") instituted condemnation proceedings against Middletown Development, Inc. and the properties to be taken (collectively "Middletown Development"). DelDOT now moves for an entry of an order granting it possession of the property. Middletown Development opposes the possession motion and moves to dismiss the condemnation action claiming that DelDOT failed to reasonably negotiate in good faith, as required under Delaware's Real Property Acquisition Act ("RPAA"). For the reasons set forth below, DelDOT's motion for possession is **GRANTED**, and Middletown Development's motion to dismiss is **DENIED**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The property ("Property") at issue is part of roughly 17 acres of real estate that Middletown Development owns in Middletown, Delaware. Middletown Development owns some surrounding tracts that it has developed, but the entire 17-acre parcel remains undeveloped and a source of controversy between Middletown Development and DelDOT.

In 2004, Middletown Development attempted to subdivide and rezone the 17-acre parcel of which the land DelDOT seeks is a part.[1] According to Middletown Development, the Town of Middletown denied its request and informed it that DelDOT might require a portion of that parcel for a proposed US Route 301 project ("301 Project"). In 2006, and again in 2007, principal in and now counsel for Middletown Development, L. Vincent Ramunno, wrote to DelDOT to determine what, if any, portion of its 17-acre parcel DelDOT planned to condemn and take. DelDOT responded in 2007, stating that it was uncertain how much, *if any*, of Middletown Development's property it might need to condemn for the 301Project.[2]

Mr. Ramunno apparently again inquired about DelDOT's Route 301 project in June 2010, claiming that DelDOT had previously informed him they would be using the entire parcel for stormwater facilities. DelDOT's November 2010 response letter indicated it was unable to locate any person, minutes, or records substantiating Mr. Ramunno's claim.[3]

---

[1] At the time, Middletown Development represented the size of the property as 19 acres. In its opposition motion, Middletown Development acknowledges that the applicable parcel "may actually be closer to 17 acres." Def.'s Opp'n to Mot. for Possession ¶ 10 n.2.

[2] *See* April 6, 2006 Letter, April 20, 2007 Letter, and May 7, 2007 Letter, Exs. C-E to Def.'s Opp'n to Mot. for Possession.

[3] *See* November 30, 2010 Letter, Ex. A to Affidavit of Robert Palandrani, Ex. E. to Pl.'s Reply Br.

DelDOT made its appraisal and first offer for the Property in 2012. The Negotiation Record and Affidavit of DelDOT Real Estate Representative Robert Palandrani reflects that in a letter dated July 26, 2012, DelDOT offered to purchase the 5.6080 acres (and temporary construction easement) needed from Middletown Development for its appraised fair market value of $352,025. The appraisal attached to the letter was prepared by an independent fee appraiser. DelDOT proposed to acquire a fee acquisition for $350,500, "Damages to the Remainder" for $1,175, and a temporary construction easement for $350.[4] An August 15, 2012 log note in the Negotiation Record indicates that DelDOT and Mr. Ramunno discussed the offer over the phone. The note further indicates Mr. Ramunno told Mr. Palandrani the offer was "fair" but that he believed DelDOT should purchase the entire 17-acre parcel.[5]

The parties corresponded from July 2012 through August 2014 about DelDOT's proposed acquisition.[6] At several points throughout the

---

[4] *See* July 26, 2012 Letter, Ex. A to Affidavit of Robert Palandrani, Ex. E. to Pl.'s Reply Br.

[5] Negotiation Record, Ex. E to Pl.'s Reply Br. at 1 (handwritten entry).

[6] *See id.* The entire Negotiation Record and appended correspondence show the following contacts:

- Letter exchanges on: July 26, 2012 (sent July 27, 2012); October 4, 2012; December 3, 2012; December 6, 2012; January 28, 2013; February 14, 2013; February 19, 2013; March 28, 2013; April 30, 2013; May 22, 2013; June 5, 2013; July 12, 2013; October 23, 2013 (sent October 24, 2013); October 31, 2013;

correspondence, DelDOT noted in the log that it believed the parties had reached an "impasse" in negotiations.[7] This was apparently due, in part, to Mr. Ramunno's claim that the Department had inversely condemned the entire parcel by preventing him from developing it.[8] It was not until May 14, 2014, that Middletown Development provided DelDOT with a counter offer of $1,147,000, based on its own appraisal. DelDOT then increased its offer to $390,000 on August 11, 2014. Middletown Development rejected that offer as "totally inadequate and unacceptable."[9]

DelDOT[10] instituted condemnation proceedings on October 31, 2014, by filing a complaint against Middletown Development, Inc., 5.6080 acres of land as a taking in fee simple, 0.0221 acre of land as a temporary construction easement

---

November 26, 2013; December 5, 2013; January 6, 2014; February 5, 2014; May 14, 2014; May 20, 2014; and August 12, 2014.

- Telephone conversations or voicemails documented on: August 15, 2012; December 6, 2012; February 5, 2014; May 2, 2014; and August 11, 2014.

[7] *See*, *e.g.*, *id.* at 2 (May 8, 2013 entry stating "we discussed the apparent impasse . . . "); *id.* at 3 (July 12, 2013 entry stating "I have recommended condemnation numerous times to District Manager. We are at Impasse.").

[8] *See* April 30, 2013 letter from L. Vincent Ramunno to DelDOT, Ex. E to Pl.'s Reply Br. ("As I repeatedly stated verbally and in writing for several years, DelDot inversely condemned the entire 19 acres parcel years ago. In fact, I was going to file an inverse condemnation action some time ago but I was assured that we would be able to resolve this.").

[9] Def.'s Opp'n to Mot. for Possession ¶ 6.

[10] The State of Delaware has brought this action by and through its Department of Transportation.

taking, and Middletown Apartments Phase I, LLC.[11]  On November 5, 2014, DelDOT filed a Motion for Possession of the Property to be taken in condemnation, attaching a notice of the motion and an affidavit of necessity.  A Certificate of Deposit was filed on November 12, 2014, reflecting the deposit of $352,025.00 with the Court as the amount DelDOT estimated to be just compensation.

Middletown Development filed an opposition to DelDOT's Motion for Possession seeking:  a denial of the motion; dismissal of the action with prejudice; a directive for DelDOT to comply with the requirements of 29 *Del. C.* § 9504 and § 9505; and an award of attorneys' fees.

At a hearing on the Motion to Possess, the Court directed Middletown Development to answer the complaint and, at their request, provided the parties additional time to engage in further negotiations.  The parties reportedly met in late November, 2014, and continued to correspond into December, but they were unable to come to an agreement.[12]  Middletown Development then filed an Answer

---

[11]     The parties have since stipulated to Middletown Apartments Phase I, LLC's dismissal from the proceedings.  *See* Stipulation and Order, Trans. I.D. 56792889.

[12]     Middletown Development lowered its demand to $768,500 with stipulations that the Town of Middletown would allow Middletown Development to donate the remaining 10.9 acres to it, and Middletown Development would recognize a tax benefit for that donation.  *See* November 26, 2014 Letter, Ex. H to Pl.'s Reply Br. at 2.  DelDOT was unable to agree to that, as it has no control over the Town of Middletown.  But DelDOT did increase its offer to $415,000. *Id.*   Thereafter, Middletown Development advised it would accept $500,000 to settle the possession issue only, not the entire condemnation proceeding.  *Id.* at 2.  DelDOT then increased its offer to $492,000, and again to $532,000 to settle the entire condemnation proceeding.

-6-

to the Condemnation Complaint and supplemented its Opposition to the Possession Motion.

### III. STANDARD OF REVIEW

In condemnation proceedings, there are two issues: 1) whether the taking is permissible, and 2) whether the taking is being justly compensated.[13] The Court must resolve first whether the taking is permissible before proceeding to a trial on just compensation.[14]

As part of the condemnation proceedings, the taking agency may move for entry of an order of possession of property.[15] This Court's Civil Rule 71.1 governs this procedure.[16] Such order "shall be entered forthwith, pursuant to 10 *Del. C.* § 6110(a)," unless the property owner can demonstrate "good cause" why the possession order should not be entered forthwith.[17] The property owner has the

---

Middletown Development rejected both offers. *Id.* at 3. Middletown Development eventually offered to settle the entire matter for $650,250 with certain conditions regarding an outlet pipe and right of way. *See* December 3, 2014 Letter, Ex. K to Pl.'s Reply Br. 2. After claiming it received no response from DelDOT, Middletown Development filed its supplemental opposition motion on December 5, 2014, reporting that the parties were unable to come to an agreement.

[13]     *Lawson v. State ex rel. Sec'y of the Dep't of Transp.*, 72 A.3d 84, 90 n. 31 (Del. 2013).

[14]     *Id.*; *see also* DEL. CODE ANN. tit. 10, § 6107 (2014) ("After the disposition of all such objections and defenses [to the taking] the cause shall proceed to the trial of the issue of just compensation.").

[15]     Del. Super. Ct. Civ. R. 71.1.

[16]     *Id.*

[17]     *Id.*

burden of overcoming the presumption of regularity and the prima facie case of necessity for a public use.[18]

Section § 6110(a) of Title 10 grants a public authority the right to take possession of the property "at any time after filing the condemnation proceeding," upon notice of the intent to take possession, and after depositing "in Court of the sum of money estimated by [the authority] to be just compensation for the property or the part thereof taken."[19]

A party whose property is subject to condemnation proceedings may object to the agency's taking of possession.[20] One such objection is an allegation that the condemnor has violated Delaware's Real Property Acquisition Act ("RPAA").[21] The RPAA provides a set of guidelines for state and local land acquisition programs to follow in real property acquisitions.[22] These guidelines are directory rather than mandatory, and noncompliance with them is forgivable upon establishment of a valid excuse.[23]

---

[18] *Id.*

[19] DEL. CODE ANN. tit. 10, § 6110(a) (2014) (requirements for entry into possession).

[20] *See id.* at § 6107 (objections or defenses to the taking of property shall be made by answer).

[21] *See, e.g.*, *City of Dover v. Cartanza*, 541 A.2d 580, 583 (Del. Super. Ct. 1988).

[22] DEL. CODE. ANN. tit. 29, §§ 9501 – 9506 (2014).

[23] *See State ex rel. Sec'y of the Dep't of Transp. v. Teague*, 2009 WL 929935, at *3 (Del. Super. Ct. Apr. 3, 2009); *Cartanza*, 541 A.2d at 583 (RPAA's guidelines are directory, not

It is the objecting party's burden to first show a RPAA violation.[24] If that burden is met, the condemning party has the burden to provide a valid excuse for its noncompliance.[25] Valid excuses include good faith efforts to comply with the RPAA, or a showing that compliance would be futile.[26] And a condemnor's noncompliance may be excusable where it has no impact on the negotiations and does not otherwise frustrate the RPAA's purpose.[27] Should the condemning party fail to set forth a valid excuse for not complying with the RPAA, the Court must dismiss the condemnation action without prejudice.[28] If subsequent good faith efforts to comply do not result in agreement, a new condemnation action may be filed.[29]

---

mandatory, and therefore failure to comply with them is a defense or an objection to the taking). *See also Lawson v. State ex rel. Sec'y of the Dep't of Transp.*, 72 A.3d 84, 88-89 n. 14 (Del. 2013) (recognizing Supreme Court's implicit adoption, in *Key Properties Grp., LLC v. City of Milford*, 995 A.2d 147, 153-54 (Del. 2010), of *Cartanza*'s holding).

[24] *State ex rel. Sec'y of the Dep't of Admin. Servs. v. Dorzback*, 1991 WL 89887, at *2 (Del. Super. Ct. May 28, 1991).

[25] *Cartanza*, 541 A.2d at 583.

[26] *Id.*

[27] *Lawson*, 72 A.3d at 89 (citing *Teague*, 2009 WL 929935, at *3).

[28] *Cartanza*, 541 A.2d at 583.

[29] *Id.*

## IV. THE PARTIES' CONTENTIONS

Middletown Development's central argument is that DelDOT failed to reasonably negotiate in good faith.[30] Without addressing which specific provision of § 9505 DelDOT allegedly violated,[31] Middletown Development argues DelDOT "was not willing to compromise to any real extent or agree to pay fair compensation;" is suggests in particular that the "Damages to the Remainder" amount is "inadequate."[32] Middletown Development alleges, too, that DelDOT has "inversely condemned" its property and should thus be required to comply with § 9504.

DelDOT contends it has engaged in extensive good faith negotiations with Middletown Development over the taking of the property, thus satisfying § 9505's guidelines. Any argument as to the amount of just compensation, DelDOT says, goes to valuation: a matter reserved for the compensation phase of the

---

[30] As such, necessity and public use are not in dispute. *See* Del. Super. Ct. Civ. R. 71.1 (property owner must, *inter alia*, "overcome . . . the prima facie case of necessity for a public use presented by the institution of" the condemnation action).

[31] Middletown Development does state that DelDOT's appraisal for the "Damages to the Remainder" in the amount of $1,174 violates § 9505(9), which requires a taking agency to offer fair compensation for the reduced value of an uneconomic remnant. But Middletown Development's bald claim that DelDOT failed to negotiate in good faith by offering a "totally inadequate" amount in light of what it views as a significant impact on the value of the property could implicate other provisions of § 9505. *See, e.g.*, § 9505(1) (requiring taking agency to make every reasonable effort to acquire property through negotiation); § 9505(3) (requiring that an "amount reasonably believed [to be] just compensation" be offered prior to negotiations -- such amount being no lower than the condemnor's appraised fair market value).

[32] Supplement to Def.'s Opp'n to Mot. for Possession 1.

condemnation proceedings. DelDOT disputes also that it has "inversely condemned" any portion of Middletown Development's property and argues that Middletown Development lacks proof for this claim.

## V. DISCUSSION

The Court must first determine whether Middletown Development has rebutted the presumption of regularity and demonstrated noncompliance with the RPAA. As Middletown Development implicates several provisions of the RPAA in its opposition, each will be considered in turn.

### A. DelDOT Negotiated in Good Faith Under § 9505(1).

Section 9505(1) requires "[e]very reasonable effort [to] be made to acquire expeditiously real property by negotiation."[33] Middletown Development contends "two telephone messages" were the extent of the compensation negotiations here, and that DelDOT rushed to condemn the property under facts similar to those in *State ex rel. Secretary of the Department of Transportation v. Amin*.[34] In *Amin*, this Court found that the State failed to comply with § 9505(1) when it moved for condemnation without giving the defendants an opportunity to obtain their own

---

[33]    DEL. CODE. ANN. tit. 29, § 9505(1) (2014).

[34]    Supplement to Def.'s Opp'n to Mot. for Possession 2-3; 2007 WL 1784187, at *1, (Del. Super. Ct. Apr. 26, 2007).

appraisal and while negotiations for alternate access options and placement sites were ongoing.[35]

Middletown Development has not met its burden to show that DelDOT has violated § 9505(1). Unlike in *Amin*, these negotiations went on for years without much success, even after the Court directed the parties to engage in post-hearing negotiations. Additionally, there is here a lengthy and thorough record of negotiation. Such record supports a finding that negotiations under § 9505(1) were sufficient.[36] DelDOT's Record of Negotiation demonstrates over two years worth of letters and phone calls exchanged over the proposed taking of the Property. Given the extensive negotiation record in this case, the Court is satisfied that DelDOT has made every *reasonable* effort to negotiate with Middletown Development pursuant to § 9505(1).[37]

---

[35] *Amin*, 2007 WL 1784187, at *4.

[36] *See, e.g.*, *State ex rel. Sec'y of the Dep't of Transp. v. Teague*, 2009 WL 929935, at *5 (Del. Super. Ct. Apr. 3, 2009) (finding no violation of § 9505(1) due to long history of negotiations, including many contacts and visits with the property owners and in-person deliveries of the appraisal report, plans, and drawings). Here, there is evidence that DelDOT was in frequent contact with Mr. Ramunno, including the provision of construction plans for the proposed site. *See, e.g.*, Negotiation Record, Ex. E to Pl.'s Reply Br. at 1-2 (handwritten entries of August 15, 2012 and October 4, 2012).

[37] *Cf. Amin*, 2007 WL 1784187, at *4-5 (finding State violated § 9505(1) by moving to condemn the property less than a month after its written offer and by failing to request a counter offer).

**B. DelDOT's Reasonable Belief It Is Offering Just Compensation.**

Section 9505(3) requires a taking agency to, "[b]efore the initiation of negotiations for real property, [establish] an amount . . . which it is reasonably believed is just compensation therefor."[38] This amount may not be lower than "the approved appraisal of the fair market value of the real property."[39]

Middletown Development contends DelDOT "seemingly agreed" that the estimated amount of compensation for the damages to the remainder property was inadequate.[40] It further insists that DelDOT deposit its increased offer of compensation and that DelDOT's failure to do so constitutes a failure to negotiate in good faith.

**1. DelDOT was not required to deposit anything more than the appraised fair market value of the property.**

When deciding a possession motion, the Court must ensure that the taking agency has complied with § 6110(a) of Title 10: the agency must deposit "the sum of money estimated by [the agency] to be just compensation for the property."[41] If the ultimate amount determined to be just compensation in the condemnation proceeding's second phase is more than what was initially deposited, the Court

---

[38] DEL. CODE. ANN. tit. 29, § 9505(3) (2014).

[39] *Id.*

[40] Supplement to Def.'s Opp'n to Mot. for Possession 1.

[41] DEL. CODE. ANN. tit. 29, § 6110(a) (2014).

"shall credit the payment to the final award"[42] and order payment of the additional sum. But, if the compensation amount eventually awarded is *less* than that initially deposited, the Court "shall enter judgment against the defendant in favor of the plaintiff for such overpayment."[43] So there is no danger that the initial deposit will foreclose a just rendering of the amount ultimately due.

DelDOT's initial offer of $352,025 was deposited as a good faith estimation of the just compensation due here. It was based on the property's appraised fair market value, and Middletown Development allegedly initially thought the offer was "fair." DelDOT's increased offer is not the equivalent of an increase in its estimation of just compensation. DelDOT, as required under § 9505(1), was attempting to consummate this acquisition through negotiations. No provision of the RPAA, § 6110, or Rule 71.1 requires a condemnor to increase its deposit to reflect its current highest offer during ongoing negotiations. To require, as Middletown Development requests, DelDOT to deposit its highest settlement offer after it had already deposited its initial good faith offer is to overlay additional obligations on the prescribed statutory procedure.[44] All that is required is for the

---

[42]     § 6110(b).

[43]     *Id.*

[44]     *See State ex rel. Sec'y of the Dep't of Transp. v. CEH/VWH Trust,* 2006 WL 2666216, at *2 (Del. Super. Ct. Aug. 17, 2006) (where defendants argued State used flawed methodology and thus should have to deposit a higher sum, court declined to "add another layer to the statutory procedure because the Defendants cannot be prejudiced").

State to "make an estimate as to the value of the property being taken at this time."[45] DelDOT, acting on behalf of the State, has done so. No further deposit is required.

### 2. There is no "flawed assumption" underlying DelDOT's just compensation offer.

A statutorily valid offer of just compensation cannot be based on flawed assumptions about the property's post-taking use.[46] When an agency bases its valuation on such flawed assumptions, it has not made a good faith offer of just compensation and so violates § 9505(3).[47]

In *Lawson v. State ex rel. Secretary of the Department of Transportation*, the State's appraisal underlying its initial offer failed to account for the fact that the taking significantly reduced the property owner's reasonably demonstrated ability to develop the property consistent with its estimated highest and best use.[48] Our Supreme Court found that the State's "continued reliance on its obviously flawed Appraisal frustrated the parties' negotiations."[49] And so the Court reversed the

---

[45]     *Id.*

[46]     *Lawson v. State ex rel. Sec'y of the Dep't of Transp.*, 72 A.3d 84, 85 (Del. 2013) (state made flawed assumption that highest value of property was based on commercial use, although the taking significantly reduced the landowner's ability to commercially develop the property).

[47]     *Id.*

[48]     *Id.* at 92.

[49]     *Id.*

trial judge's findings that the State had complied with § 9505(3), and held instead that the State was violated the RPAA with no excuse for noncompliance.[50]

Here, there is no "flawed assumption" underlying the offer of just compensation. DelDOT's offer does take into account damage to the remainder of the full 17-acre parcel. Middletown Development disputes the value DelDOT assigns to that damage; it believes the remainder should be assessed as an "uneconomic remnant." Section 9505(9) defines "uneconomic remnant" as "a parcel of real property in which the owner is left with an interest after the partial acquisition of the owner's property and the agency concerned has determined the parcel has little or no value or utility to the owner."[51] When acquiring property that will leave an uneconomic remnant, the condemning agency shall offer to acquire it.[52] DelDOT has made no such determination here.

Middletown Development also posits that DelDOT uses an incorrect valuation method for the damage to the remainder by basing it on acreage and not potential lot-value Middletown Development claims it will lose.[53] According to Middletown Development, its intended use of the land remaining after the taking

---

[50]    *Id.* at 92-93.

[51]    DEL. CODE. ANN. tit. 29, § 9505(9) (2014).

[52]    *Id.*

[53]    *See* Def.'s Opp'n to Mot. for Possession ¶ 11.

-16-

would be single family home lots. Middletown Development says that the land could produce 45 of those lots without the taking, but only 15 with the taking.[54] Middletown Development's damage estimate for the remainder value is based on the 15 salvaged lots.[55] DelDOT's appraisal did allow for damage to the remainder in the amount of $1,174 (which amounts to $78.27 per lot using Middletown Development's estimation of lost lots). Middletown Development's appraisal, however, values the damage to the remainder at $187,500 ($12,500 per lot).[56] And Middletown Development's position is that even these 15 lots have no real value because "no one would want to live by a 30 feet high super highway."[57] The Court finds that simply alleging that the land will have no value based on an unsupported prediction presents a valuation issue to be more fully developed in discovery and presented at the just compensation hearing.

DelDOT has, therefore, complied with § 9505(3). Nothing requires the Department to increase its deposit at this point in the proceedings. No flawed assumption underlay its initial offer. It estimated a value for the damages to the remainder. And it provided a corresponding compensation offer. The record is

---

[54]     *See id.* ¶ 8.

[55]     *Id.* ¶ 9.

[56]     *Id.*

[57]     May 14, 2014 Letter, Ex. A to Def.'s Opp. Mot. Possession.

-17-

insufficient for the Court to find that Middletown Development has demonstrated an improper valuation method.

What remains to be determined in this case is the appropriateness of DelDOT's compensation estimation. As this is an issue of compensation, requiring discovery and a future hearing on that issue, there is no reason to deny the possession motion.

Even if the Court were to find a failure to meet the requirements under § 9505(3), it is clear that dismissing the condemnation action and requiring the parties to begin negotiations anew will be futile. Given the extensive record of negotiations – prior to the institution of the condemnation proceedings and upon the Court's directive after the motion for possession hearing – "'no amount of negotiation or compliance with the RPAA' [will] resolve[] the stalemate that the parties reached during those negotiations."[58]

### C. Inverse Condemnation.

Inverse condemnation requires an affirmative act of the State "which directly and substantially interferes with property rights."[59] A "mere

---

[58] *Key Properties Grp., LLC v. City of Milford*, 995 A.2d 147, 154 (Del. 2010) (internal citation omitted).

[59] *State ex rel. Sec'y of the Dep't of Transp. v. Thetavest, Inc.*, 1995 WL 108659, at *6 (Del. Super. Ct. Feb. 6, 1995).

announcement" of a proposed condemnation plan – which DelDOT did not evem make here – is not a *de facto* taking.[60]

Middletown Development's austere insistence that it has been prevented from developing the parcel for ten years lacks factual support and is insufficient to sustain a claim for inverse condemnation.[61] Middletown Development wrote in its April 20, 2007 letter that it was "the Town," not DelDOT, which prevented it from subdividing pending DelDOT's proposed Route 301 Project. Middletown Development further concedes in its brief that it was "always clear that DelDOT did not need the entire parcel."[62] There is no supporting documentation that DelDOT prevented Middletown Development from developing its full parcel, or any part thereof, or claimed any need to take the entire parcel for stormwater management. In turn, the Court cannot find inverse condemnation of Middletown Development's property by DelDOT at this point.

---

[60] *Barsky v. City of Wilmington*, 578 F. Supp. 170, 174 (D. Del. 1983).

[61] *See Shearin v. Town of Elsmere*, 813 A.2d 1141 (Del. 2002) (finding claim for "a 'taking without due process' fail[ed] as a matter of law since the record is devoid of any evidence that the [taking agency] sought to appropriate any portion of [plaintiff's] land for its own use.").

[62] Def.'s Opp'n to Mot. for Possession ¶ 10.

## VI. CONCLUSION

Middletown Development, in its opposition to the possession motion, has not met its burden under Rule 71.1 to overcome the presumption of regularity in this condemnation matter. DelDOT made all reasonable efforts to acquire the property through negotiation, and its offer of just compensation does not violate the procedures and requirements set forth in either § 6110(a) or § 9505(3). As this dispute is now joined as one over the value of the property only, it may be determined by the required hearing on just compensation. Accordingly, for the reasons stated above, DelDOT's Motion for Possession is **GRANTED**, and Middletown Development's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

*/s/ Paul R. Wallace*
**PAUL R. WALLACE, JUDGE**

Original to Prothonotary
cc: All counsel via File & Serve