IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANEL HUBBARD, | § | |
| | § | No. 82, 2017 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 0906021444 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted:   November 15, 2017
Decided:    January 23, 2018

Before **STRINE**, Chief Justice; **VAUGHN** and **TRAYNOR**, Justices.

## **O R D E R**

This 23rd day of January 2018, having considered the briefs and the record below, it appears to the Court that:

(1)    Following a six-day trial in early 2010, a Superior Court jury found Anel Hubbard guilty of one count of Attempted Murder in the First Degree, five counts of Possession of a Firearm During the Commission of a Felony, two counts of Robbery in the First Degree, one count of Carjacking in the First Degree, one count of Reckless Endangering in the First Degree, and one count of Conspiracy in

the Second Degree.[1]  The Superior Court declared Hubbard a habitual offender, and sentenced him to twelve life terms without the possibility of probation or parole. This Court affirmed Hubbard's convictions on direct appeal, which was limited to a challenge of the trial court's admission of a custodial statement he made to an investigating detective.[2]

(2)    The facts upon which Hubbard was charged and convicted are set forth in detail in our opinion resolving Hubbard's direct appeal.[3]  For the purpose of addressing the claims Hubbard has raised in his motion for post-conviction relief, an abbreviated rendition of the facts should suffice.

(3)    Two men, one of whom was armed with a handgun, "carjacked" John Walker's motorcycle at gunpoint.  As one of the carjackers, later identified as Isaiah Taylor, drove away on the motorcycle, the other—eventually identified by Taylor as Hubbard—fired upon Walker and his companion, striking Walker once in the jaw, twice in the thigh, and once in the calf.  A search of the residence and room where Hubbard resided uncovered a handgun that, according to a forensic firearm examiner, fired a bullet that was found at the crime scene.

---

[1] Hubbard was also found guilty of one count of Possession of a Deadly Weapon by a Person Prohibited, which was severed and heard simultaneously as a bench trial. *State v. Hubbard*, 2017 WL 480567, at *1 (Del. Super. Jan. 25, 2017).
[2] *See Hubbard v. State*, 16 A.3d 912, 914 (Del. 2011).
[3] *See id* at 914-17.

2

(4)     Hubbard was brought to the Wilmington Police Department on the date in question where he was interviewed by Detective Leccia. Instead of invoking his right to remain silent, Hubbard began to answer Detective Leccia's questions. Initially, Hubbard denied any involvement in the shooting and related a fictitious story about his whereabouts the previous night. But as the interrogation progressed, Hubbard admitted that he was present at the scene of the crime and that he had given the gun to Taylor, who shot Walker. Near the conclusion of the interview, Hubbard made additional incriminating statements that could be interpreted as admissions that he was the shooter. For instance, when Detective Leccia told Hubbard that a surveillance video would reveal the truth of what happened, Hubbard replied: "Yeah but my face is covered so if my face was covered how would y'all know it was me."[4] Shortly thereafter, when Leccia suggested that Hubbard might have reacted to the victim "grabbing for something," or possibly "pull[ing] a knife," Hubbard replied: "I don't know what he was getting," and conceded, "I f _ _ _ed up[.] I ain't mean for it to go down like that."[5]

(5)     Following the affirmance of his convictions on direct appeal, Hubbard filed a Motion for Postconviction Relief, advancing several claims of ineffective

---

[4] App. to State's Ans. Br. at B-84. The statements quoted herein are from an unofficial transcript of a video recording admitted at trial as State's Exhibit 66.

[5] *Id.* at B-85.

assistance of counsel and a cumulative-due-process claim, and requesting an evidentiary hearing.[6]

(6)     On appeal, Hubbard claims that the Superior Court erred by (i) finding that his ineffective-assistance-of-counsel claims were procedurally barred, (ii) declining to find that his lawyer was ineffective for failing to request a cautionary accomplice-testimony instruction commonly referred to as a *Bland* instruction,[7] (iii) basing its rejection of his other ineffective-assistance claims (for failure to move to suppress an out-of-court identification and prison phone calls) upon an inadequate record, *i.e.*, without an evidentiary hearing, and (iv) denying his cumulative-due-process claim.  We address each in turn.

(7)     We review questions of law and claims alleging constitutional violations *de novo*.[8]  We review the Superior Court's denial of a request to hold an evidentiary hearing for an abuse of discretion.[9]  We will uphold the Superior Court's factual findings unless they are clearly erroneous and unsupported by the record.[10]

(8)     Hubbard first claims that the trial court erred to the extent that it relied upon Superior Court Rule of Criminal Procedure 61(i)(3) to bar Appellant's post-

---

[6] *See Hubbard*, 2017 WL 480567, at *1-2.
[7] *See generally Bland v. State*, 263 A.2d 286 (Del. 1970).
[8] *Swan v. State*, 28 A.3d 362, 382 (Del. 2011); *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).
[9] *See Outten v. State*, 720 A.2d 547, 551 (Del. 1998).
[10] *Lawson v. State*, 72 A.3d 84, 88 (Del. 2013).

conviction claims of ineffective assistance of counsel.[11] It is undisputed that the 2005 version of Rule 61 is applicable to Hubbard's motion. We conclude, and the State concedes, that these claims are not barred by Superior Court Rule of Criminal Procedure 61(i)(3) "to the extent that they were raised in the context of ineffective assistance of counsel claims."[12]

(9) Hubbard next claims that his trial counsel was ineffective for failing to request a *Bland* instruction, cautioning the jury to examine the testimony of Hubbard's alleged accomplice with suspicion. Though the instruction given to Hubbard's jury was not fully in accord with *Bland*, Hubbard cannot show that, had the Superior Court issued a *Bland* instruction, "there is a reasonable probability that the outcome of the case would have been different."[13] Indeed, the record contains ample evidence other than Taylor's testimony that pointed to Hubbard's guilt, including Hubbard's incriminating admissions as set forth above.[14] Hubbard's claim

---

[11] The Superior Court held that Hubbard's ineffective-assistance claims were "truly collateral attacks on the evidence which as used to convict him" and were therefore procedurally barred because they were "not asserted in the proceeding leading to the conviction." *See Hubbard*, 2017 WL 480567, at *11.

[12] *See* State's Ans. Br. at 10.

[13] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

[14] The jury also heard recordings of Hubbard's phone conversations during his pre-trial incarceration in which he observed that the police would not find fingerprints on the gun because he had "wiped it off." App. to Appellant's Opening Br. at A83. Because of this substantial amount of corroborating evidence, this is not the sort of case where a *Bland* instruction is most in need—cases where, as the *Bland* instruction itself puts it, "there is nothing in the evidence, direct or circumstantial, to corroborate the alleged accomplices' accusation that [the defendant] participated in the crime." *Bland v. State*, 236 A.2d 286, 289-90 (Del. 1970).

5

that he was prejudiced by the absence of a more robust *Bland* instruction is, on this trial record, without merit.

(10) Hubbard next argues that the Superior Court erred in denying his post-conviction claim that his trial counsel was ineffective for failing to move to suppress his prison phone calls. Hubbard seems to argue that, because this Court in *Johnson v. State* ("*Johnson I*")—decided in 2009—adopted the two-pronged test announced in *Procunier v. Martinez*[15] to determine whether the seizure of an inmate's outgoing email is permissible under the First Amendment, his lawyer was ineffective for failing to move to suppress recordings of his outgoing telephone calls.[16] This argument fails for three reasons.

(11) First, *Procunier v. Martinez* was a class action, challenging on First Amendment grounds, the constitutionality of California prison regulations relating to the censorship of prisoner's incoming and outgoing mail. It did not involve the use of seized mail in a criminal prosecution or application of the exclusionary rule. To be sure, in *Johnson I*, this Court applied the *Procunier* test to a claim that an inmate's outgoing mail should have been suppressed because the State's seizure of

---

[15] 416 U.S. 396, 413 (1974). "First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials . . . must show that a regulation authorizing censorship furthers one or more of the substantial government interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved."

[16] *Johnson v. State*, 983 A.2d 904, 922 (Del. 2009) ("*Johnson I*").

6

the mail violated his First and Fourth Amendment rights and found that the seizure passed the test. The Court did not, however, hold that the failure of the *Procunier* test would warrant application of the exclusionary rule, which is a remedy available for Fourth Amendment claims.

(12) Second, in *Johnson I*, the defendant was unaware that his outgoing mail was subject to inspection and copying. In contrast, when Hubbard placed the calls the recordings of which were admitted at trial, he was warned that the calls were "subject to monitoring and recording,"[17] eliminating any expectation of privacy he might otherwise have had.

(13) Finally, we did not apply a *Procunier*-type analysis to prison phone calls until over two years after Hubbard's trial in a case coincidentally also captioned *Johnson v. State* ("*Johnson II*").[18] For all these reasons—the questionable applicability of the exclusionary rule to First Amendment claims, the absence of an expectation of privacy, and the absence of legal authority at the time of Hubbard's trial—the decision of Hubbard's trial counsel not to file a motion to suppress the prison phone calls was not objectively unreasonable.

(14) Hubbard also claims that his trial counsel was ineffective for failing to challenge Taylor's identifications of Hubbard. Upon review of an affidavit

---

[17] *See* App. to Opening Br. A82, A96.
[18] *Johnson v. State*, 53 A.3d 302, 2012 WL 3893524, at \*2 (Del. 2012) (updated table decision) (Note: This is published in Table at 53 A2d 302 - check citation form.)

submitted by Hubbard's trial counsel below, Hubbard's counsel's tactic to pursue cross-examination over suppression does not appear to have been unreasonable. This claim, therefore, also lacks merit.

(15)   Hubbard next claims his right to a fair trial was infringed based upon the cumulative effect of the above errors.  As Hubbard's underlying claims are without merit or did not prejudice him, he has failed to establish cumulative error.

(16)   Finally, Hubbard argues that the case should be remanded because the Superior Court abused its discretion when it refused to hold an evidentiary hearing on his Rule 61 motion.  It appears the record below sufficiently informed the court of the nature of Hubbard's claims.  The Superior Court thus properly acted within its discretion to dispose of Hubbard's motion without holding an evidentiary hearing.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ Gary F. Traynor
Justice